**The STATE of Ohio, Appellee,**

v.

**BROWN, Appellant.**

[Cite as *State v. Brown* (1996), 112 Ohio App.3d 583.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

Decided July 15, 1996.

584

586

590

*Donald W. White*, Clermont County Prosecuting Attorney, and *David Henry Hoffmann*, Assistant Prosecuting Attorney, for appellee.

*Lawrence R. Fisse*, for appellant.

WALSH, Presiding Judge.

Defendant-appellant, Rhonda Jean Brown, appeals her conviction for murder in violation of R.C. 2903.02.

Shortly before noon on Friday, March 3, 1995, Dennis Lawson discovered the body of a young boy at the end of Union Chapel Road in Amelia, Ohio. The boy was lying face-up in a wooded area and did not move. Lawson immediately called "911" from a nearby residence.

Deputy John Maupin of the Clermont County Sheriff's Department arrived on the scene within three minutes of Lawson's call and determined that the boy was dead. Maupin radioed for assistance in securing and investigating the scene. Lieutenant Dennis Stemen arrived shortly thereafter and found a white, blood-stained shirt with a chest pocket and a missing button under the boy's body. The shirt had the "clean, fresh, laundered smell" of fabric softener. Stemen removed materials from a bookbag strapped to the boy's back identifying him as eight-year-old Jerry Howell and leading Stemen to believe Jerry had attended Amelia Elementary School. Stemen also found blood on a paved portion of the end of Union Chapel Road near where Jerry's body lay.

Through Amelia Elementary School, Stemen learned that Jerry had lived in the Eastgate mobile home park with his five-year-old brother, Chance Howell, and his mother, appellant. Stemen also learned that Jerry had not attended school that day. Stemen and Sergeant Barry Jacobson visited appellant's trailer at the mobile home park. Before Stemen and Jacobson could knock on the front door, appellant opened the door and immediately asked if something was wrong with Jerry. The officers asked appellant to sit down. As he entered the trailer, Stemen observed Chance sleeping on the floor in his winter coat and boots with his feet facing toward the door. Stemen informed appellant that Jerry had been the victim of a homicide earlier that day. Appellant lit a cigarette and made crying noises. Stemen noticed that appellant did not cry, however.

Appellant informed the officers that she had argued with Jerry about taking "Power Rangers" toy figures to school that morning, and that Jerry left for his bus stop down the street at 8:00 a.m. Appellant claimed that she last saw Jerry walking toward the bus stop. Appellant told Stemen that she had not left the trailer all day because her station wagon had broken down and did not work. Appellant stated that she had been getting Chance ready to go look for Jerry, but that Chance had fallen asleep.

Appellant gave Stemen permission to search the trailer and her station wagon. In the trailer, Stemen found recently washed clothes which smelled like fabric softener and had not been put away. In the back seat of the station wagon, Stemen found laundry detergent and bleach. Stemen found no blood in the trailer or the station wagon. At no time did appellant ask what had happened to Jerry, how he had died, where he had been killed or where he was now. Appellant did not inquire whether she could see the body, whether the police were sure it was Jerry, or if the police knew who did it or had any leads.

Police scoured the mobile home park, interviewing residents and visitors. Three residents of the park told police that Jerry had not been at the bus stop or the surrounding area on the morning of March 3, 1995. Two park visitors reported that they had observed that appellant's station wagon was not in her driveway at 8:55 a.m. or 2:00 p.m. on March 3, 1995. A park resident told the police that at approximately 12:30 p.m., appellant got into her station wagon, backed it up a few feet, pulled it forward, got out of the station wagon and went back into her trailer. Investigator Dave Doyle of the Clermont County Sheriff's Department subsequently tested appellant's station wagon and determined that it operated without difficulty.

Over the course of the weekend of March 3, 1995, prosecutors with the Clermont County Prosecutor's Office appeared on television, reporting that investigators had found a shirt which was involved in a homicide. The prosecutors displayed the blood-stained white shirt which had been found under Jerry's body. Following the broadcast, three acquaintances of appellant individually contacted police and reported that they had seen appellant wearing the same shirt or a similar shirt prior to the murder.

Appellant was arrested on March 6, 1995 and indicted by the Clermont County Grand Jury on March 8, 1995, charged with aggravated murder and murder. A jury trial commenced on June 28, 1995.

At trial, Dr. David Smith, a forensic pathologist, testified that he had performed an autopsy on Jerry's body. Smith found that Jerry's face had numerous pinpoint areas of bleeding. Jerry had a crushed chest and internal injuries, including a lacerated lung and a torn liver, burn injuries on the right side of the head and neck, several abrasions and lacerations on the skin of the head, including one large laceration which tore the scalp from the skull, and a skull fracture. Smith found small stones and dirt embedded along the lacerations of the scalp. Jerry's right shoulder had the fabric weave imprint of his thermal underwear top, indicating that a large force had been applied to that area. Smith also found evidence of strangulation. Small abrasions on Jerry's hands indicated defense wounds.

Smith found that the cause of death was not strangulation but chest injuries due to a large force. Smith testified that the chest injuries were more likely caused by a vehicle than by the hand of a person and were consistent with the body lying on the ground and being run over by a vehicle. Smith testified that Jerry's chest injuries were not consistent with the body being struck by a car while standing or walking upright. Smith concluded that Jerry had been alive for at least a few minutes after being struck by the large force. Smith also found that Jerry's burn injuries could have been caused by the skin touching the hot underside of a vehicle.

Appellant's best friend, Star Case, testified that she was sitting and watching television with appellant when prosecutors spoke about Jerry's murder on television. Case testified that appellant was nervous and that appellant's legs were shaking. When prosecutors displayed the white, blood-stained shirt found under Jerry's body, Case mentioned to appellant that Case saw hair on the shirt that might help identify the killer. Case testified that her statements made appellant even more nervous. Case also testified that appellant had a shirt similar to the one which appeared on television.

Susan Grabowski, a supervisor at Clermont County Children's Services, testified that on March 6, 1995, she, along with Deputy Linda Saylor, drove Chance to the end of Union Chapel Road where Jerry's body had been found three days earlier. Grabowski testified that Chance stated to her that he had been there before with appellant and Jerry, whom Chance called "Bubby." Chance pointed to the precise spot where Jerry had been found and stated, "That's where Bubby was left." Chance stated that Jerry had been "tooken" there and hurt. Grabowski testified that Chance said that when he left this area, he left with appellant but that Jerry was not with them.

Finally, Chance testified that on the morning Jerry died, a fight occurred in appellant's trailer. Chance testified that Jerry got in trouble and that appellant hit Jerry in the chest. Afterward, appellant drove Jerry and Chance down Union Chapel Road in her station wagon. All three got out of appellant's station wagon at the end of Union Chapel, that appellant and Jerry went off together for some time and that appellant returned alone. Chance testified that as he and appellant drove away, he saw Jerry and Jerry said, "Help."

On July 6, 1995, the jury returned a verdict finding appellant not guilty of aggravated murder and guilty of murder. The Clermont County Court of Common Pleas subsequently sentenced appellant to fifteen years' to life imprisonment. Appellant filed a notice of appeal on August 1, 1995 and presents twelve assignments of error for review.

■ In her first assignment of error, appellant argues that the prosecution erred by withholding evidence of Chance's statement that someone other than appellant had killed Jerry, and the identity of the instrument used to kill Jerry, appellant's station wagon. For the following reasons, we find that appellant's first assignment of error is without merit.

In *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the United States Supreme Court considered the rights of an accused to receive exculpatory evidence known to the prosecution:

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–1197, 10 L.Ed.2d at 218. See *State v. Johnston* (1988), 39 Ohio St.3d 48, 60, 529 N.E.2d 898, 910–911.

The Ohio Supreme Court has articulated clearly, however, that *Brady* applies only in situations where information known to the prosecution but unknown to the defense is discovered *after trial.* *State v. Wickline* (1990), 50 Ohio St.3d 114, 116, 552 N.E.2d 913, 916–917, citing *United States v. Agurs* (1976), 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342, 349.

The record shows that the evidence appellant claims the state suppressed in this case was revealed during the prosecution's case and in the presence of the jury. Grabowski testified that Chance told her that a "bad man" had been at the scene and that "the bad man hit his brother in the head with [a] brick." The prosecution's forensic expert testified that Jerry's injuries were consistent with being run over by a car, and the prosecution produced evidence that, on the day of the murder, appellant's car was present where Jerry's body and blood stains on the pavement were later found. Additionally, appellant's counsel heard a tape recording *in camera* wherein Chance stated that a "bad guy" hit Jerry over the head with a brick and killed him. As the evidence was revealed during trial, we find that no *Brady* violation occurred in the present case. See *Wickline,* 50 Ohio St.3d at 116, 552 N.E.2d at 916–917.

 Even assuming that *Brady* applied, however, we could not find for appellant on this assignment of error.

"In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley* (1985), 473 U.S. 667, 683, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494. See *Johnston,* 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus.

After review of Chance's statements regarding a "bad man" in light of the complete record, we cannot conclude that a reasonable probability exists that appellant would have been acquitted had the statements been disclosed prior to trial. The jury's determination beyond a reasonable doubt that appellant purposely caused Jerry's death despite Grabowski's revelation of the allegedly exculpatory evidence supports such a conclusion. Moreover, appellant was made aware of Chance's statements in their entirety before the presentation of her case, yet failed to actively pursue a theory wherein a "bad man" killed Jerry, and ultimately failed to cross-examine Chance about the circumstances of the murder.

Also, we find that the identification of appellant's car as the instrument of death is neither exculpatory nor material to guilt or punishment and not the type of evidence contemplated by the drafters of the rule in *Brady*. The lack of trace evidence demonstrating that appellant's car was used to murder Jerry goes to the credibility of the prosecution's case and whether the weight of the evidence is sufficient to sustain a conviction, not any alleged prosecutorial misconduct.[1] Accordingly, appellant's first assignment of error is hereby overruled.

Appellant's second assignment of error argues that the trial court erred in denying appellant's motion for an interview with Chance prior to trial and charges that the prosecution improperly denied appellant's counsel access to Chance by directing Clermont County Department of Children Services ("CCCS") to deny interviews with Chance.

A witness has the right to choose not to be interviewed by a defendant in a criminal case prior to trial. *State v. Zeh* (1987), 31 Ohio St.3d 99, 102, 31 OBR 263, 265–266, 509 N.E.2d 414, 417. If the witness is a minor, the legal custodian has the right to refuse the interview. See *Dover v. State* (1982), 250 Ga. 209, 211–212, 296 S.E.2d 710, 712. The prosecution does not have a duty to make witnesses available for defense interviews but has a duty not to obstruct access to the witness. *Zeh* at 102, 31 OBR at 266, 509 N.E.2d at 417. See *United States v. Black* (C.A.9, 1985), 767 F.2d 1334, 1337.

In the present case, the record discloses that CCCS was Chance's legal guardian and that CCCS denied appellant access to Chance. However, appellant has failed to show, and the record does not reveal, any evidence that the prosecution directed CCCS to deny appellant access to Chance or was involved in the decision to deny access to Chance. Indeed, appellant's sole witness in support of her motion to compel an interview admitted on cross-examination that she knew of no evidence that CCCS was influenced by the prosecution in its decision to deny access to Chance. Thus, we conclude that the prosecution did not act improperly concerning appellant's opportunity to interview Chance.

Review of the record also fails to indicate that the trial court's judgment overruling appellant's motion for an interview with Chance was in any way arbitrary, unreasonable or unconscionable. Thus, the trial court did not abuse its discretion, and appellant's second assignment of error is hereby overruled.

In her third, fourth, fifth and sixth assignments of error, appellant argues that the prosecution engaged in prosecutorial misconduct during voir dire, opening argument, direct examination of Chance, and closing argument. Appel-

---

1. We consider the weight of the evidence against appellant below, at appellant's tenth and eleventh assignments of error.

lant initially argues that the prosecution erred in opening argument and during direct examination of Smith by stating that its expert would present testimony based upon an improper standard and subsequently eliciting testimony based upon that standard. We disagree.

Ohio courts permit a qualified expert interpreting certain scientific or medical facts which are beyond the experience, knowledge or understanding of the jury to express an opinion as to the probability or actuality of a fact pertinent to an issue in the case. *Brandt v. Mansfield Rapid Transit, Inc.* (1950), 153 Ohio St. 429, 41 O.O. 428, 92 N.E.2d 1; *Shepherd v. Midland Mut. Life Ins. Co.* (1949), 152 Ohio St. 6, 39 O.O. 352, 87 N.E.2d 156, paragraph two of the syllabus. Thus, when an expert draws a conclusion as to a fact pertinent to an issue, *e.g.*, whether hair samples came from the same source or bullets came from the defendant's gun, the expert's opinion must be based upon reasonable medical or scientific certainty. See *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155; *State v. Holt* (1969), 17 Ohio St.2d 81, 85, 46 O.O.2d 408, 410, 246 N.E.2d 365, 367–368.

However, an expert may also testify to observable characteristics of the available evidence, including the possibilities, consistencies and inconsistencies indicated by the evidence, thereby providing circumstantial evidence that the defendant committed the offense. *Morris v. State* (June 10, 1996), Butler App. No. CA95–11–208, unreported, at 5, 1996 WL 307235. See *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 191, 616 N.E.2d 909, 915; Gianelli, Ohio Evidence Manual (1988) 98, Section 702.05. "A piece of relevant evidence need not by itself prove a fact in order to be admissible." *D'Ambrosio* at 191, 616 N.E.2d at 915, citing 1 McCormick on Evidence (Strong Ed.1992) 776, Section 185. That the expert cannot conclude with reasonable scientific certainty as to the fact in issue, *e.g.*, whether a specific vehicle caused a death, goes to the weight of the testimony, not its admissibility. *D'Ambrosio* at 191, 616 N.E.2d at 915; *Morris* at 8.

In the present case, Smith did not opine whether appellant's station wagon was the vehicle used to kill Jerry. Thus, any failure to testify with reasonable scientific certainty on this question is not error. Instead, Smith testified that Jerry's injuries were consistent with injuries caused when the body lies on the ground and is run over by a vehicle and inconsistent with an erect body being struck by a vehicle. This testimony, although not conclusive as to the cause or instrument of death, assists the jury in eliminating other possible causes and instruments of death and is admissible. See *Morris* at 8; Evid.R. 702. Thus, we find no error in the prosecutor's statements concerning Smith's expert testimony and elicitation of that testimony.

Appellant argues that the prosecution erred by suggesting during voir dire that convicting appellant would "do justice" and that the prosecution would present only reliable evidence, and appealing to jurors in closing argument to convict appellant based upon community sentiment.

After review of the transcript, we find that the prosecution, in fact, did not suggest that convicting appellant in particular would "do justice." Rather, the prosecution merely stated during voir dire that "no matter who killed this child, it's tragic" and questioned a potential juror as to whether she understood that "the job of the jury is to make sure that whatever comes out of [the death] is according to justice."

Also, we note that the prosecution did not state or imply that it would present only reliable evidence. A central issue during voir dire was whether the prospective jurors had heard and been influenced by the comments of a popular local talk-radio personality. For this reason, the prosecution admonished prospective jurors that evidence heard through the media may not be reliable and therefore should not be considered by jurors. The prosecution continued, stating that evidence admitted at trial, however, may be reliable and must be the only evidence considered by the jury.

The prosecution did not distinguish between the evidence it would present and evidence for the defense and did not claim or imply that either party would present only reliable evidence. The record shows that the prosecution simply attempted to identify and remove prospective jurors who would rely on evidence heard and remembered from television and radio. We find no error in the above statements.

In its closing argument, the prosecution related that his neighbor had asked if the prosecution was "going to let [appellant] get away with [murder]." The prosecution told the neighbor that "it was not up to" the prosecution but up to the jury. Statements similar to those of the prosecution in this case concerning a duty of the jury to "find some reasonable doubt" have serious potential to prejudice a defendant. See *State v. Byrd* (1987), 32 Ohio St.3d 79, 82, 512 N.E.2d 611, 615–616; *State v. Black* (1991), 78 Ohio App.3d 130, 133–134, 604 N.E.2d 171, 173. We therefore admonish prosecutors to avoid similar, potentially prejudicial statements and thereby avoid the risk of reversal.

In the instant case, however, we note that the prosecution did not make statements analogous to those proscribed by Ohio law and clearly expressed to the prospective jurors that they could only convict based upon the evidence and when each element was proven beyond a reasonable doubt. We find that appellant has failed to show that the statements were prejudicial or likely to create bias and conclude that no error occurred.

█ Appellant next argues that the prosecution engaged in other improper conduct during the course of the trial. Appellant's claims of misconduct include an extensive list of occasions in which the facts of the case varied between the prosecution's representation of the facts in opening and closing arguments and the trial testimony elicited. For example, appellant complains that the prosecution stated that appellant stood outside of her trailer when Stemen and Jacobson approached it, while the transcript reveals that appellant did not step outside the trailer.

█ The general rule is that counsel may comment on evidence admitted at trial. *Drake v. Caterpillar Tractor Co.* (1984), 15 Ohio St.3d 346, 347, 15 OBR 468, 470, 474 N.E.2d 291, 293. Opening and closing statements are not evidence and are intended only to advise the jury what counsel expect the evidence to show. *State v. Turner* (1993), 91 Ohio App.3d 153, 157, 631 N.E.2d 1117, 1120; *State v. McWhite* (1991), 73 Ohio App.3d 323, 328, 597 N.E.2d 168, 171. This fact was stated to the jury in the present case. We find that the prosecution's failure to prove facts outlined in its opening and closing statements did not constitute misconduct, as the statements were not made in bad faith and were not of such a nature as to be manifestly prejudicial. See *State v. Senzarino* (C.P.1967), 10 Ohio Misc. 241, 243, 39 O.O.2d 383, 385, 224 N.E.2d 389, 392.

█ Additionally, we note that appellant did not object to the statements of which she now complains and therefore has waived all but plain error. *State v. Greer* (1988), 39 Ohio St.3d 236, 246, 530 N.E.2d 382, 396. Plain error exists only where it is clear that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899. Regarding the statements above, we cannot conclude that but for the variances between the prosecution's statements and the trial testimony, and the other errors of which appellant complains, appellant would have been acquitted.

█ Appellant next argues that the prosecution erred in its direct examination of Chance by leading his testimony and inducing him to show a teddy bear to the jury and talk about the cross placed at the site where Jerry's body was found.

█ "A leading question 'instructs [the] witness how to answer or puts into his mouth words to be echoed back.'" *D'Ambrosio*, 67 Ohio St.3d at 190, 616 N.E.2d at 914, quoting Black's Law Dictionary (6 Ed.1990) 888. The trial judge has discretion to allow leading questions on direct examination. Staff Note to Evid.R. 611(C). Where leading questions merely direct the witness's attention to the topic of inquiry, they are proper. *D'Ambrosio* at 190, 616 N.E.2d at 914, citing 3 Wigmore on Evidence (Chadbourn Rev.1970) 154, Section 769.

The trial court allowed leading questions to facilitate testimony in light of Chance's age and possible emotional difficulty in relating the events of Jerry's

murder to strangers. The record shows that the prosecution forewarned appellant and the trial court *in camera* that it would occasionally resort to leading questions where necessary and where the trial court would permit it. The record shows that the prosecution kept the leading questions to a minimum and used them only where necessary to direct Chance's attention to the examination at hand.[2] We conclude, therefore, that the prosecution did not err in leading Chance's testimony and find no abuse of the trial court's discretion in admitting the testimony.

 . Additionally, we find that while the prosecution's references to the teddy bear Chance brought for comfort and the cross placed at the site where Jerry's body was found may have been likely to create bias or prejudice, appellant failed to object and thereby again waived all but plain error. *Greer*, 39 Ohio St.3d at 246, 530 N.E.2d at 396. We find that reasonable uses exist for both references and cannot conclude that the trial outcome would have been otherwise but for the prosecution's references above.

In sum, after thorough review of the entire transcript in the present case, we find that most of appellant's claims of prosecutorial misconduct do not constitute error. Where error occurred, however, nothing in the record suggests that, but for the error, the jury's verdict in this case would have been different. Accordingly, we hereby overrule appellant's third, fourth, fifth and sixth assignments of error.

 In her seventh assignment of error, appellant argues that the trial court erred in admitting the testimony of Grabowski which related statements Chance

---

**2.** We note further that some of Chance's most meaningful testimony was not elicited by leading or suggestive questions:

"*Q.* [by prosecutor Donald White]: What happened when you [and Jerry] fought?
"*A.* [by Chance Howell]: He got in trouble.
"*Q.* Who did he get in trouble with?
"*A.* My mom.
"*Q.* What did your mom do when he got in trouble?
"*A.* Hit him.
"* * *
"*Q.* * * * Do you remember when you left the place where the cross is now?
"*A.* Yeah.
"*Q.* Who was in the car besides you and your mom, anybody?
"*A.* My mom and me, no one else.
"*Q.* Where was Bubby?
"*A.* He got tooken [*sic*].
"* * *
"*Q.* When you left there, what do you remember, did Bubby say anything or do anything when you were leaving?
"*A.* Yeah.
"*Q.* What did he say or do?
"*A.* He said[,] 'Help.' "

made to her regarding the circumstances of Jerry's death. Appellant argues that Chance's statements were not spontaneous and unreflective or made while in a state of excitement, and thus Grabowski's testimony was not admissible as an exception to the hearsay rule.

A trial court has broad discretion in admitting or excluding evidence. *State v. Duncan* (1978), 53 Ohio St.2d 215, 219, 7 O.O.3d 380, 383, 373 N.E.2d 1234, 1236–1237.

" 'It is elementary that the trial judge is to decide those questions of fact which must be decided in order to determine whether certain evidence is admissible. * * * If his decision of those questions of fact, as reflected in his ruling on the admissibility of * * * [the] declaration, was a reasonable decision, an appellate court should not disturb it.' " *State v. Wallace* (1988), 37 Ohio St.3d 87, 90, 524 N.E.2d 466, 469, quoting *Potter v. Baker* (1955), 162 Ohio St. 488, 500, 55 O.O. 389, 394, 124 N.E.2d 140, 146–147.

The trial court admitted Grabowski's testimony relating Chance's declarations as an excited utterance per Evid.R. 803(2). We review whether this determination was reasonable or an abuse of the trial court's discretion.

At trial, Grabowski testified that on March 6, 1995, she and Saylor took Chance to the end of Union Chapel Road where Lawson had discovered Jerry's body three days earlier. At the scene, Chance stated that he had been there before with appellant and Jerry and that his brother got hurt there, hit over the head with a brick. Without being prodded or told previously that Jerry's body had been found in the area, Chance pointed to the precise, unmarked spot where Jerry's body had been found and stated, "That's where Bubby was left." Chance stated that when he and appellant left the scene, they left without Jerry.

This testimony was offered into evidence, in part, "to prove the truth of the matter asserted" and, therefore, was hearsay. Evid.R. 801(C). While hearsay statements are generally not admissible, Evid.R. 802, when a declarant makes a statement while under the stress of excitement caused by a startling event or condition, that statement may be admissible. Evid.R. 803(2); *Potter*, 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, at paragraph two of the syllabus; *Wallace*, 37 Ohio St.3d at 88, 524 N.E.2d at 468. Before such a statement is admitted, it must be shown that some startling occurrence produced a nervous excitement in the declarant, the statements were made before the nervous excitement lost domination over the declarant's reflective faculties, the statements related to the circumstances of the startling occurrence, and the declarant personally observed the matters asserted. *Potter*, at paragraph two of the syllabus.

Grabowski testified that when she and Saylor took then-five-year-old Chance to visit the scene where Jerry's body had been found, Chance looked out of the window of the car and observed their location. His eyes widened and he slumped in his seat. Although he had been talking freely up to that point, Chance became quiet. He became nervous and upset and stopped looking out the window. When finally coaxed out of the car, Chance stayed close to the car and made the statements noted above.

We find that Chance's return to the location where he last saw Jerry was a startling event which produced in him a nervous excitement and that this nervous excitement stilled his reflective faculties. The record shows that Chance made statements to Grabowski within minutes of arriving at the end of Union Chapel Road and while under the stress of returning to the area. Chance's statements related to the circumstances of the startling occurrence, and Chance personally observed the matters asserted in his statements to Grabowski.

The rationale for admitting an excited utterance is that the circumstances surrounding the excited statement do not allow the declarant a meaningful opportunity to reflect before speaking and thus the chance that the statement is fabricated is greatly reduced. *Wallace*, 37 Ohio St.3d at 88, 524 N.E.2d at 468. Declarations of children in their tender years may be particularly trustworthy. *State v. Kunsman* (Mar. 30, 1984), Lake App. No. 9–252, unreported, 1984 WL 6310. See *Beausoliel v. United States* (C.A.D.C.1939), 107 F.2d 292, 295. The record does not reveal any evidence indicating that Chance's statements were fabricated, distorted or reflective. Accordingly, we hold that the trial court judgment that Chance's statements concerning the circumstances of Jerry's death qualify as excited utterances under Evid.R. 803(2) was reasonable. Thus, we find that the trial court did not abuse its discretion in admitting Grabowski's testimony relating Chance's statements and hereby overrule appellant's seventh assignment of error.

Appellant's eighth assignment of error argues that the trial court erred in excluding expert testimony she presented to assist the jury in assessing Chance's testimony. Appellant's argument is not well taken.

Evidence which has the tendency to make the existence of a material fact more or less probable than it would be without such evidence is relevant and generally admissible. Evid.R. 401 and 402. Again, we note that the trial court has discretion in admitting or excluding relevant evidence. *Duncan*, 53 Ohio St.2d at 219, 7 O.O.3d at 383, 373 N.E.2d at 1236–1237.

Appellant planned to present the testimony of Dr. Lawrence Todd White, an experimental psychologist, on the issue of the impact of repeated interviews upon minor children. The prosecution objected to the admission of this testimony, and

the trial court sustained the objection. Appellant subsequently proffered White's testimony outside the jury's presence. White testified that children often change their answers to questions by authoritative figures when the questions are repeated. The trial court ruled to exclude this specific evidence but informed appellant that she would be able to present other testimony by White as provided in *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795. Appellant chose not to present any of White's testimony.

We find nothing in the record suggesting that Chance was repeatedly asked questions or changed his answers over time. Thus, as the trial court noted, White's testimony concerning the effect of repeated questioning would have been irrelevant under Evid.R. 401 as not being probative of a fact of consequence in the case and would not have been based upon facts perceived by him or in evidence as required by Evid.R. 703. Accordingly, we cannot state that the trial court's decision to exclude the testimony of White at issue was arbitrary, unreasonable or unconscionable. Appellant's eighth assignment of error is overruled.

In her ninth assignment of error, appellant argues that the trial court erred in overruling her motion for change of venue. Appellant argues that her motion for change of venue should have been granted because voir dire established that the majority of the seated jury possessed preconceived opinions about the case allegedly due to extensive media coverage of the crime. Again, we disagree.

The forum for testing prospective jurors for prejudice from pretrial publicity is voir dire. *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. Where a probability of unfairness exists, a fair trial cannot be had and thus a change of venue may be appropriate. *Sheppard v. Maxwell* (1966), 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620. Absent an abuse of the trial court's discretion, an appellate court must not substitute its judgment for that of the trial court in ruling on a motion for change of venue. *Id.*

In the present case, appellant did not challenge a single prospective juror for cause on the basis of pretrial publicity, and each prospective juror stated that he or she would be impartial and limit his or her consideration to the evidence presented. Although jurors' statements that they would not be influenced is not dispositive, *Marshall v. United States* (1959), 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250, 1251–1252, a trial court's reliance upon the truthfulness of the jurors' responses is not an abuse of discretion which warrants reversal. *State v. Spirko* (1991), 59 Ohio St.3d 1, 24, 570 N.E.2d 229, 254–255.

Nothing in the record indicates that any seated juror failed to be impartial, and appellant has failed to demonstrate that the jury was biased against her or that a

lack of impartiality resulted in the guilty verdict. Accordingly, we find that the trial court properly relied upon the jurors' responses that they would be fair and did not abuse its discretion in denying appellant's motion for change of venue. Appellant's ninth assignment of error is hereby overruled.

In her tenth assignment of error, appellant argues that the trial court erred in overruling her motion for an acquittal under Crim.R. 29.

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, *if the evidence is insufficient to sustain a conviction of such offense or offenses.*" (Emphasis added.) Crim.R. 29(A).

A trial court shall not enter a judgment acquitting a defendant, however, if reasonable minds could reach different conclusions based upon the evidence about whether each material element of the crime had been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

Appellant was convicted of murder in violation of R.C. 2903.02, which provides that "[n]o person shall purposely cause the death of another." R.C. 2903.02(A). We find that the record reveals sufficient evidence permitting reasonable minds to conclude that the prosecution had proven each element of the crime beyond a reasonable doubt. Of note, Grabowski testified that Chance stated that appellant had hit Jerry on the morning of Jerry's murder, drove Chance and Jerry out to Union Chapel Road, left Chance behind while going off with Jerry for some time, and got back in the station wagon with Chance, leaving Jerry behind. Without having been told that Jerry had been found in the area, Chance pointed to the precise, unmarked location where Lawson and police had discovered Jerry's body three days earlier and stated that appellant had left Jerry there on the morning of Jerry's murder. Further substantial evidence showed that appellant became angry with Jerry on the morning of his murder, struck him in the chest causing injury, drove him to the end of Union Chapel Road, and ran him over with her station wagon, leaving him to die.

Accordingly, we find that the trial court did not err in failing to grant appellant's motion for acquittal under Crim.R. 29 and overrule appellant's tenth assignment of error.

In her eleventh assignment of error, appellant argues that the trial court judgment is against the manifest weight of the evidence. Appellant claims that the only evidence against her is circumstantial and is legally insufficient to support her conviction for murder. An appellate court's function in reviewing both the sufficiency and the weight of the evidence supporting a criminal

conviction is to examine all evidence offered by the parties in a light most favorable to the prosecution and to then determine "whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. Where the evidence is such that "any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt," a defendant's conviction must not be disturbed on appeal. *Id.*

As related above, the record is this case contains sufficient evidence upon which the jury could have reasonably concluded that appellant purposely caused Jerry's death. In addition to the evidence discussed above, we note that several witnesses identified the shirt found under Jerry's body as appellant's shirt, that appellant lied to police in stating that she had not left her trailer and that her car did not work on the morning of the murder, and that Chance testified that appellant left Jerry calling for help at the end of Union Chapel Road. Although the prosecution's case was purely circumstantial, such evidence is as probative as direct evidence. *Jenks* at paragraph one of the syllabus. Proof of purpose, absent an admission, always requires circumstantial evidence. *Id.*

We find that such testimony, if believed, provided substantial evidence upon which the jury reasonably could find appellant guilty of the offense of murder beyond a reasonable doubt. Moreover, the jury, as trier of fact, was in the best position to assess the credibility of the witnesses and the weight to be given their testimony. *Jenks,* 61 Ohio St.3d at 279, 574 N.E.2d at 507. Appellant's eleventh assignment of error is hereby overruled.

In her twelfth and final assignment of error, appellant argues that she received ineffective assistance of trial counsel. To show ineffective assistance, appellant must demonstrate that counsel's performance fell below an objective standard of reasonable representation, *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627 and that "a reasonable probability [exists] that but for counsel's ineffective representation, the outcome of the proceeding would have been different." *State v. Yarber* (1995), 102 Ohio App.3d 185, 188, 656 N.E.2d 1322, 1324.

Appellant points out that counsel failed to present television and radio broadcasts and copies of newsprint in support of appellant's motion for change of venue. We cannot state that this conduct fell below an objective standard of reasonable representation. Additionally, even had counsel presented the evidence and the trial court determined that extensive publicity existed, this alone does not require a change of venue. *State v. Brown* (1988), 38 Ohio St.3d 305, 314, 528 N.E.2d 523, 535–536. Appellant has failed to show that the jury was

influenced by the media to the extent that they were biased or prejudiced against her. Thus, we cannot find that but for this alleged error, the outcome of the trial would have been different.

■ Appellant notes that counsel failed to object when the prosecution elicited testimony from Smith regarding possibilities and consistencies in the evidence rather than reasonable medical certainty. Appellant also complains that counsel failed to object to the prosecution's questions regarding Chance's teddy bear and the cross placed at the site of where Jerry's body was discovered. As discussed above, however, this testimony was not improper and did not constitute error. The trial court properly would have overruled any objection and, thus, any failure to object by counsel did not affect the outcome of the proceedings.

■ Appellant notes that counsel failed to cross-examine Chance. We find that counsel's decision whether to cross-examine the deceased's five-year-old brother was a tactical decision "made after thorough investigation of law and facts relevant to plausible options" and thus virtually unchallengeable. See *Strickland*, 466 U.S. at 690–691, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. In this case, the decision not to cross-examine is plausible in light of the expert testimony which established the cause of death to be a large force consistent with a vehicle and not a brick. Also, appellant has failed to demonstrate that cross-examination of Chance would have resulted in an acquittal.

■ Last, appellant complains that counsel failed to elicit testimony as to Chance's demeanor between his witnessing of the murder and his statements to Grabowski three days later. Appellant argues that Chance was not in a state of excitement in that interim, which defeats a finding that Chance's statements qualified as an excited utterance and precludes that damaging evidence from being admitted.

Appellant overlooks the fact that the startling event which caused Chance's excitement and stillness of reflective thought was not the murder itself, but returning to the scene where Chance last saw Jerry dying and asking for help. As noted above, the record leaves no question that Chance was under the stress of that event at the time he made statements to Grabowski concerning the circumstances of Jerry's death. Thus, counsel's alleged failure to elicit testimony regarding Chance's demeanor was not prejudicial and does not constitute ineffective assistance of counsel. Accordingly, appellant's twelfth assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG and POWELL, JJ., concur.