OPINION
In August 1997, a jury convicted defendant-appellant, Ricardo Bradley, of one count of rape of a person less than thirteen years of age in violation of R.C. 2907.02(A)(1)(b), and one count of receiving stolen property in violation of R.C.2913.51(A). In September 1997, the Clermont County Court of Common Pleas sentenced appellant to consecutive terms totaling nine years in prison for his offenses. Also in September 1997, the court adjudicated appellant a sexual predator pursuant to R.C. 2950.09. Appellant appeals his convictions raising four assignments of error. Finding no merit in any assignment of error, we affirm.
The record reveals that on April 29, 1997, appellant, age twenty-five, and his friend, Jason Blevins ("Blevins"), had been "hanging out" playing basketball at the Bella Vista Apartment complex in Clermont County. That day, appellant met the victim, a twelve-year-old girl, and some of her friends. Appellant told the girls that his name was "Chris." One of the victim's friends, April, informed Blevins that her apartment would be empty after 6:30 p.m. the following day, after her grandmother left for church. Later that same evening, friends of the victim testified that they saw appellant, Blevins, a person named Ace, and the victim, "cruising" in a maroon, four-door Pontiac.
The next day, April 30, 1997, after 6:30 p.m., the victim and her friends were in April's apartment watching television. Appellant and Blevins arrived and an argument soon erupted between Blevins and one of the victim's friends. That friend, Blevins, and appellant left April's apartment. Blevins and appellant returned to April's apartment shortly thereafter. Blevins and April then went into April's bedroom, leaving appellant alone with the victim in the living room.
The victim testified that appellant asked her if she was a virgin. When she asked appellant why he wanted to know such information, she testified that appellant responded that he wanted to have sex with her. The victim testified that she left the living room to find April. The victim found April and Blevins in the bedroom and Blevins told the victim "to get out." The victim left April's bedroom, and, rather than return to the living room with appellant, went down the hall to another bedroom. Appellant followed the victim into the bedroom where he sexually assaulted her. Specifically, the victim testified that appellant grabbed her from behind, shoved one hand down inside of the front of her shorts, ran the other hand up the leg of her shorts, and then inserted his finger into her vagina. The victim then pushed appellant away and fled the apartment.
In the hallway outside April's apartment, the victim ran into a neighbor, Linda Perkins ("Perkins"). Perkins testified that in the hallway the victim was doubled over, crying, and very distraught. Perkins testified that the victim said she had been raped. Perkins went to find a neighbor and to call 911. Perkins also testified that she had seen appellant in the Bella Vista apartment parking lot, with a friend, in a four-door, maroon or burgundy colored Pontiac, the day before the alleged rape. While Perkins could not recall the Pontiac's license plate number, she testified that the Pontiac had Hamilton County license plates.
After telling Perkins about the assault, the victim went home to tell her mother. The victim's mother testified that the victim returned home hysterical and in tears stating that she had been raped. Soon thereafter, representatives from the Clermont County Sheriff's department arrived and began to interview the victim and other witnesses, and to search for appellant.
Deputy Sheriff Bill Welch ("Welch"), who responded to the rape call at the Bella Vista apartments, testified that upon finding the victim, "she was very upset and crying." After recounting the events to Welch, the victim provided Welch with a physical description of appellant and identified him as going by the name of "Chris." From witnesses at the scene, Welch was able to learn in which building the alleged perpetrator was hiding.
When Deputy Sheriff Doug Doerman ("Doerman") arrived at Bella Vista apartments, he met with Welch who instructed him to proceed to the apartment in which appellant was believed to be hiding. Blevins met Doerman at the apartment door, and upon questioning told Doerman that he was alone in the apartment. Blevins agreed to allow Doerman and Welch to enter and search the apartment. Welch discovered appellant hiding in a closet and testified that upon discovery appellant was "sweating profusely." Welch testified that appellant matched the description of "Chris" given by the victim. Welch further testified that when he asked appellant why he was hiding in the closet appellant replied, "I have warrants." Appellant was handcuffed, placed under arrest, and escorted to the patrol car. In the patrol car, Doerman requested appellant's name, date of birth, and social security number, but appellant refused to provide such information.
After appellant was taken into custody, Doerman requested that the victim come downstairs to identify appellant. The victim obliged and positively identified appellant as the perpetrator. The victim was then taken to Clermont Mercy Hospital for examination.
Deputy Sheriff Lori Saylor ("Saylor") responded to the rape call by meeting the victim at Clermont Mercy Hospital. Saylor interviewed the victim, who identified her perpetrator as going by the name of "Chris." Saylor also interviewed the victim's mother who identified appellant's car as a burgundy, four-door Pontiac. The victim's mother described for Saylor where the car was parked in the Bella Vista apartment parking lot.
The following day, Saylor continued her investigation, and determined that appellant's real name was not "Chris," but Ricardo Bradley. Additionally, Saylor located the four-door, maroon Pontiac that appellant had been identified as driving in the Bella Vista apartment parking lot. When Saylor ran the Pontiac's license plates through the Department of Motor Vehicles, it came back as belonging to a car that had been reported stolen from Cincinnati, Hamilton County, two weeks earlier.
At trial, Tammy Arnett, the owner of the four-door, maroon Pontiac, testified that her car had been stolen from her brother's apartment complex in Cincinnati. Arnett testified that she had not granted anyone permission to use or borrow her car. Arnett also testified that the car was returned to her with a broken steering column.
Appellant's case was tried to a jury beginning on August 27, 1997. The record reveals that both the prosecutor and counsel for appellant exercised appropriate challenges and were active in the selection of the jury. During jury selection, one of the jurors expressed concern because appellant had access to private information such as juror addresses and telephone numbers as provided by jurors on their questionnaires. This juror was subsequently removed from the jury by appellant's counsel's exercise of a preemptory challenge. Also during a short recess taken in the middle of jury selection, appellant's counsel lodged the following objection:
 If I could, Judge, I would like to make an objection for the record * * * regarding the respective jury pool as a whole at this point. I'd like the record to reflect that one, there are no African Americans on this particular jury pool. I would like to object as to the jury minority of the panel as a whole as it has been empaneled, it does not respectively reflect a jury of his peers nor even a crosssection of the community. * * * Secondly, I would argue that the age of the respective jurors, my client is 25, the median age of the current jury pool as it is right now is in excess of 40 years. We believe that for those respective reasons we would * * * ask that a mistrial be declared at this particular point, that a new jury be empaneled that would reflect more diversity of the cross-section of the potential jurors * * *.
The court overruled the motion for a mistrial. Finally, just after the jury was empaneled, it was discovered that one of the jurors was the judge's neighbor. Appellant's counsel argued that trial court should dismiss the juror and seat an alternate. Instead, the trial judge brought the juror into the courtroom and subjected him to additional voir dire until he was satisfied that the juror remained impartial.
The trial then proceeded and appellant failed to present a single piece of evidence in his case-in-chief. Appellant's sole defensive strategy was to cross-examine the witnesses presented by the State. On August 29, 1997, the jury returned guilty verdicts on both the rape and the stolen property charges.
On September 15, 1997, the trial court sentenced appellant. Also on September 15, 1997, the trial court held a sexual predator classification hearing as required by R.C. 2950 et seq. Considering the factors listed in R.C. 2950.09(B)(2), including: appellant's age (twenty-five), the age of the victim (twelve), and the fact that appellant was on parole for criminal offenses committed in New Jersey, "[t]he Court [found] by clear and convincing evidence that he [appellant] is a sexual predator, specifically he is a person who has committed a sexually oriented offense and is likely to engage in the future of [sic] more sexually oriented offenses." The court filed its Judgment Entry on October 7, 1997 and appellant filed his Notice of Appeal on October 8, 1997.
In his first assignment of error, appellant contends:
 THE TRIAL COURT ERRED IN NOT DISMISSING THE JURY BECAUSE THE JURY WAS NOT FAIR OR IMPARTIAL.
Before we address appellant's contentions, we must first address appellant's failure to follow proper procedures to challenge the array. The time for challenging the array is clearly specified in Crim.R. 24(E): "A challenge to the array shall be made before examination of the jurors." (Emphasis added.) However, the record reveals that appellant's counsel failed to timely raise his challenge to the array before examining the jurors on voir dire, instead opting to wait until more than half of the voir dire examination was complete before addressing his concerns to the court. Having failed to timely raise his challenge to the array pursuant to the dictates of Crim R. 24(E), we find that appellant has effectively waived this right. State v. Wade (1978), 53 Ohio St.2d 182, 185-186. Nevertheless, because appellant did not frame his assignment of error under Crim.R. 29(E), but instead under the broad tenets of a constitutional violation, we shall still proceed to address his contentions in turn.
In this assignment of error, appellant contends that his constitutional rights were violated because the jury that convicted him was neither fair nor impartial. In support of this contention, appellant generally points to the fact that the venire for his trial included no African-Americans or Hispanics.[1] More specifically, appellant contends that certain instances of jury misconduct so "polluted" the jury pool that appellant was denied a fair and impartial trial. Appellant calls this court's attention to (1) the juror who expressed concern at appellant's access to juror's private information and (2) the judge's neighbor being empaneled on the jury.
The United States Supreme Court has held that the "selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." Taylor v. Louisiana (1975), 419 U.S. 522, 528,95 S.Ct. 692, 696. However, the Supreme Court explained:
 in holding that petit juries must be drawn from a source fairly representative of the community * * * [there is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, * * * but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community." (Citations omitted.) Id. at 538; 95 S.Ct. at 702.
Four years following the Taylor decision, the United States Supreme Court established a three-part test to demonstrate a prima facia violation of the fair cross-section requirement.
 (1) The defendant must show that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) that the under-representation is due to systematic exclusion of the group in the jury selection process. Duren v. Mississippi (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668.
In 1991, the Supreme Court of Ohio adopted this test in State v. Fulton (1991), 57 Ohio St.3d 120, paragraph two of the syllabus.
Turning our attention to the case sub judice, we note that while appellant easily establishes the first prong of the Duren/ Fulton test (as African-Americans and Hispanics have long been considered "distinctive" groups) appellant fails to establish the second and third prongs. Appellant offered no evidence at trial, nor has he on appeal, that (1) African-Americans or Hispanics are unfairly and unreasonably represented in relation to the number of such persons in Clermont County, and (2) such under-representation is due to systematic exclusion from the jury selection process. Therefore, appellant fails to establish a prima facia case that his constitutional rights were violated by a jury that was not fairly or impartially drawn from Clermont county's venire.
We now turn our attention to appellant's contention that certain instances of juror misconduct so "polluted" his jury that he was prevented from receiving a fair and impartial trial. With respect to the juror who was concerned that appellant had access to juror's private information, we note that appellant fails to put forth any evidence detailing how he was prejudiced by this juror. In his brief to this court, appellant simply states that this juror exhibited "animosity." However, we find that, because this juror was excused through the exercise of a preemptory challenge, the brief presence of this juror on the panel could not possibly result in prejudice to appellant. "In the absence of prejudice * * * a judgment will not be reversed `because of minor and technical defects in jury selection procedures.'" Phillips v. Value City Stores, Inc. (Sept. 16, 1997), Franklin App. No. 96APE12-1711, unreported at 26, citing State v. Strodes (1976),48 Ohio St.2d 113, 116.
Finally, with respect to the juror who was the trial judge's neighbor, we find that when the trial court conducted additional voir dire of this juror it took sufficient and appropriate steps to ensure appellant was not disadvantaged by this juror's presence on the jury. "Because determinations of juror bias largely depend on the trial judge's assessment of potential jurors' demeanor and credibility, deference must be paid to the trial court." State v. Keith (1997), 79 Ohio St.3d 514, 520, citing Wainwright v. Witt (1985), 469 U.S. 412, 424,105 S.Ct. 844, 852. Thus, finding appellant's challenges to the jury without merit, we overrule appellant's first assignment of error.
In his second assignment of error, appellant contends:
 THE TRIAL COURT ERRED BY CONVICTING THE DEFENDANT WHEN SUCH CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In challenging his convictions, appellant attacks the credibility of the victim. Specifically, appellant attacks the suspect nature of the victim's testimony because much of it was elicited through leading questions from the prosecutor. However, given both the tender age of the victim as well as the consistency of her multiple accounts of the rape, we find appellant's contentions without merit.
In determining whether a criminal conviction is against the manifest weight of evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
In order to convict appellant of rape, the jury had to find that appellant had engaged in sexual conduct with the victim, who was not his spouse, when the victim was less than thirteen years of age. R.C. 2907.02(A)(1)(b). We have reviewed the evidence offered at trial and the applicable law, and find that a jury could have concluded that the prosecution proved beyond a reasonable doubt that appellant engaged in sexual conduct with the victim.
A trial judge has discretion to allow leading questions on direct examination. See Staff Note to Evid.R. 611(C). Specifically, Evid.R. 611(C) allows leading questions as necessary to develop testimony. Additionally, this court has previously held that in light of a witness' young age, the use of leading questions on direct lies within the discretion of the trial court. State v. Brown (1996), 112 Ohio App.3d 583 (it was within the discretion of the trial court to allow some leading questions on direct where witness was of tender age); State v. Madden (1984), 15 Ohio App.3d 130 (in a prosecution for rape, trial court properly permitted the use of leading questions to child victims).
Upon examining the evidence presented in the case sub judice, we consider appellant's questions to the victim about whether she was a virgin and his expression of wanting to have sex with her consistent with the subsequent sexual assault. Additionally, we find the victim's presentation of the rape to her mother, to Deputy Welch at the Bella Vista apartments, and to Deputy Saylor at the hospital solidly consistent. Finally, this court pays great deference to the fact that the jury had its own opportunity to observe the demeanor of the victim, to assess her credibility first-hand, and to compare her testimony at trial to the accounts she had previously given to her mother, Welch, and Saylor.
Turning our attention now to appellant's conviction for receiving stolen property, we find that in order to convict appellant the jury had to find that appellant had received, retained, or disposed of the property of another either knowingly or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. R.C.2913.51(A). Examining the evidence presented, we believe a jury could find that the prosecution proved beyond a reasonable doubt that appellant had retained the property of another while having knowledge that it had been obtained through the commission of a theft offense. First, the prosecution produced several witnesses who identified appellant as driving a maroon-colored, four-door Pontiac that was later confirmed as a stolen vehicle. Second, the prosecution presented testimony that the Pontiac's steering column had been broken. A jury could infer from this fact that appellant knew, or at least had reason to believe, that the Pontiac he was driving was stolen.
When assessing a manifest weight of the evidence claim, an appellate court has the duty to examine the entire record, weigh all the evidence, and make all reasonable inferences. However, appellant offered absolutely no evidence or testimony in his defense to counter the evidence and testimony offered by the prosecution. Consequently, this court honors the jury's assessment of the facts, testimony, and evidence presented at trial. We find appellant's convictions are not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
In his third assignment of error, appellant contends:
 THE TRIAL COURT ERRED IN LABELING DEFENDANT PURSUANT TO O.R.C. SECTION 2950.01 ET SEQ. BECAUSE THE STATUTE IS UNCONSTITUTIONAL.
R.C. 2950.01 et seq. establishes a procedure for classifying criminal offenders convicted and sentenced for various sexually oriented offenses as sexual predators.[2] R.C. 2950.01 et seq. creates a comprehensive registration and community notification scheme which must be complied with upon an offender's release from prison. The classification procedure applicable to appellant is contained in R.C. 2950.09:
 (B)(1) Regardless of when the sexually oriented offense is committed, if a person is to be sentenced on or after the effective date of this section for a sexually oriented offense * * * the judge who is to impose sentence upon the offender shall conduct a hearing to determine whether the offender is a sexual predator.
It should be noted that pursuant to R.C. 2950.09(C)(1), an offender may also be adjudicated a sexual predator if the offender is convicted of or pleads guilty to a sexually oriented offense prior to the effective date of the statute if the department of rehabilitation and correction recommends the offender be adjudicated a sexual predator.
In this assignment of error, appellant contends that requiring him to undergo an adjudicatory hearing, but not requiring those who committed sexually oriented offenses prior to the effective date of the statute to undergo an adjudicatory hearing, violates his Equal Protection rights as set forth in the United States and Ohio Constitutions. Appellant correctly urges this court to consider his attack on R.C. 2950.09 et seq. under the "rational basis" test.
However, appellant's contention is not novel. This contention was considered and rejected by this court in State v. Nicholas (Apr. 6, 1998), Warren App. Nos. CA97-05-045, CA97-04-035, CA97-04-036, CA97-05-040, CA97-05-044, CA97-05-046, CA97-05-047, CA97-05-052, CA97-06-63, unreported. In Nicholas, this court stated:
 * * * [T]he sexual predator classification scheme found in R.C. 2950.09(C) does not violate the Equal Protection Clause. The statute * * * bears a rational relationship to a legitimate governmental interest, namely to protect the public from sex offenders. Id. at 13-14.
Therefore, relying on Nicholas, we overrule appellant's third assignment of error.
In his fourth assignment of error, appellant contends:
 THE TRIAL COURT ERRED IN LABELING DEFENDANT A SEXUALLY ORIENTED OFFENDER.
In this assignment of error, appellant argues that the trial court abused its discretion when it adjudicated appellant a sexual predator. Appellant appears to contend that because his prior criminal record contained "no sexually oriented offenses" the trial court erred in adjudicating him a sexual predator.
R.C. 2950.09(B)(2) governs a trial court's determination of whether an offender shall be classified as a sexual predator. The statute requires the trial court to consider "all relevant factors, including, but not limited to, all of the following:
 (a) The offender's age; (b) The offender's prior criminal record regarding all offenses, including but not limited to, all sexual offenses; (c) The age of the victim of the sexually oriented offense for which the sentence was imposed;
* * *
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense * * *. (Emphasis added).
In this case, the record indicates that the offender was twenty-five years of age, while at the time of this offense the victim was twelve.[3] Furthermore, the trial court's presentence investigation revealed that, at the time of the offense, appellant was on parole from the state of New Jersey for the commission of armed robbery and felony drug offenses. Therefore, pursuant to R.C. 2950.09(B)(2), the trial court properly considered the offender's prior criminal record, regardless of the fact that appellant's prior criminal acts were not sexually oriented offenses. The trial court considered such information in light of the criminal justice system's overall ability to rehabilitate appellant or to prevent appellant from committing future criminal acts. The trial court expressed clear concern about appellant's risk of recidivism.
 THE COURT: * * * In terms of the criminal record. The legislature has chosen to make — to require that the Court consider the prior criminal record regarding all offenses, including but not limited to sexual offenses. And I would agree with you that the fact that someone commits a theft offense, does not indicate that they are likely to commit a sex offense. * * * The fact, however, that one is not amenable to rehabilitation when they have been convicted of crimes of violence and crimes involving theft offenses, the fact that they have committed further offenses after — when they were on parole, the fact that society — the court system has been unable to rehabilitate Mr. Bradley to this point having committed a sex offense, I think it is a fact that makes it more likely that he won't be rehabilitated or subject to rehabilitation with respect to the status of sexual predator.
Consequently, this court finds that the trial court properly considered appellant's previous criminal record. Additionally, we find that the trial court's determination that appellant is a sexual predator was supported by clear and convincing evidence. Accordingly, appellant's fourth assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] Although raised at trial, appellant does not challenge the collective age of the jury on appeal. Nevertheless, we note that the average age of the jury as compared to that of the defendant has been held to not constitute a "distinctive group" in the community. State v. Price (Mar. 29, 1996), Lucas App. No. L-95-071, unreported.
[2] A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E).
[3] Appellant contends in this assignment of error that at the time the offense was committed the victim was fourteen years old. However, the record indicates that the victim was born in September 1984 and the offense was committed in April 1997, thereby making the victim twelve years old at the time of the offense.