JOURNAL ENTRY AND OPINION
Appellate case numbers 74416 and 74466 have been consolidated for purposes of briefing and disposition. In 74416, defendant-appellant Javish Veras appeals from his conviction for involuntary manslaughter. Appellant assigns the following errors for review:
 I. THE COURT DENIED DEFENDANT A FAIR TRIAL IN VIOLATION OF HIS DUE PROCESS RIGHTS WHEN IT FAILED RULING ON DEFENDANT'S RIGHT TO DISCOVERY OF THE IDENTIFICATION PROCESS AND VOIRE (SIC) DIRE OF THE WITNESSES, AND RULED THE MOTION TO SUPPRESS PRE-TRIAL STATEMENTS TO BE MOOT.
 II. THE PROSECUTOR'S MISCONDUCT VIOLATED DEFENDANT'S RIGHTS TO A FAIR TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 III. DEFENDANT WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED BY SENTENCING APPELLANT TO THE MAXIMUM SENTENCE CONTRARY TO LAW, AND ABUSED ITS DISCRETION AND ERRED BY FAILING TO COMPLY WITH R.C. 2929.13(B).
Finding appellant's appeal in 74416 to lack merit, the judgment of the trial court is affirmed.
 I.
On July 24, 1997, the grand jury returned an indictment charging appellant with the aggravated murder of Christopher Blair. Appellant entered a plea of not guilty. The state amended the indictment to a charge of involuntary manslaughter in violation of R.C. 2903.04(B) with a firearm specification. On March 16, 1998, the case proceeded to trial before a jury.
Dr. Carlos Santoscoy testified that he performed the autopsy on seventeen-year old Christopher Blair. Dr. Santoscoy stated that Blair died from a gunshot wound to his back which exited from Blair's chest. This was a contact wound, meaning the muzzle of the gun was against the skin at the time it was fired. Blair also suffered from a graze gunshot wound on his right hand.
Nine-year old Thomas Bailey testified that on June 15, 1997, he exited the corner store after purchasing some candy when he noticed a fight across the street. Bailey did not witness the beginning of the fight between Blair and Alex Ruiz. Bailey saw three people get out of an automobile and join in the altercation by assisting Ruiz in fighting Blair. The three males kicked and punched Blair, preventing Blair from escaping. When Blair would try to get away, the three men would grab him. Blair was knocked to the ground and kicked by the three men and Ruiz. Ruiz then pulled a gun out from under his shirt and shot Blair in the back as Blair ran away. Blair fell to the ground but got up again, only to be shot again by Ruiz. Bailey identified appellant as being one of the three men who were in the car and who joined in the fight. Bailey stated he saw appellant kick and strike Blair. Appellant aided in preventing Blair from escaping.
Thirteen-year old Ricky Blair testified that he witnessed the fight which ended in his brother's death. Ricky Blair stated that the fight began between his brother and Ruiz. While Christopher Blair and Ruiz were involved in the fight, a couple of other people left a car and began fighting Christopher Blair as well. Although Ricky Blair saw his brother try to escape, the other men involved in the altercation held Christopher Blair back. Ricky Blair identified appellant as one of the people fighting his brother.
Jose Vargas testified that he pled guilty to involuntary manslaughter in the death of Christopher Blair. Vargas stated that he was with appellant and two other people on the evening of June 15, 1997. The four men drove to a store at West 34th Street and Meyer Avenue in Cleveland. Vargas stated that after they got out of the car to go into the store, he noticed a boy from the neighborhood having an argument with Christopher Blair. Eventually, Vargas and his friends began fighting with Blair. Vargas averred that appellant fought and punched Blair. Blair tried to escape but Vargas and his friends would grab Blair to prevent him from doing so. Blair did escape briefly but ran into Ruiz. The others caught up with Blair and Ruiz. Ruiz struck Blair with a gun which then fired. Vargas and his friends, including appellant, ran back to their car and fled the scene.
Carito Santiago testified that he spoke to appellant on June 15, 1997, while both were being held at the city jail. Appellant talked about the fight that took place on West 34th Street and Meyer Avenue. Appellant admitted to Santiago that he and Vargas were involved in the fight. Jeremy Urbassik also was in the city jail on that night. Urbassik testified that he heard appellant discussing the fight. Urbassik averred that appellant said that the white boy deserved it.
Andre Curry testified for the defense. Curry stated that he witnessed the fight and that appellant was not one of those involved. Curry knew appellant so he would have recognized appellant if appellant were a part of the altercation.
Heidi Dones testified that she held a Father's Day party on June 15, 1997. The police raided the party and arrested many of those attending, including appellant.
Neftali Santiago averred he was with appellant at the party at Dones' home. Santiago also was arrested and soon learned he would be charged in the murder of Christopher Blair. Santiago hired a private investigator who established that Santiago was in a store at the time of the murder. Santiago stated appellant accompanied him to the store but stayed in the car. The store was located at West 47th and Clark, not at West 34th Street and Meyer.
Philip Noble testified that he was at his home on Meyer Avenue on the day in question. Noble witnessed the fight and stated that appellant was not a participant. Noble later admitted he could not say for sure if appellant was there or not because he does not see very well.
Samuel Antonio also witnessed the June 15, 1997, fight. Antonio stated that he knew appellant well but that appellant was not there. Antonio only recognized Ruiz as one of the participants in the melee.
Jesus Alex Ruiz testified that he was convicted of the murder of Christopher Blair. Ruiz admitted hitting Blair with his gun. The gun fired unexpectedly. Ruiz averred that neither appellant nor Vargas were involved in the fight.
The state called Michael Burger, a Cleveland police detective, in rebuttal. Detective Burger testified that he spoke to appellant on June 16, 1997. Appellant stated he rode his bicycle to a party the previous day. While on his way to the party, appellant said he saw a large group of police and males on Meyer Avenue. Appellant stopped and was questioned by an officer about whether he knew Ruiz. Appellant replied in the negative before going into a delicatessen to purchase some juice. Appellant did not tell Detective Burger that someone picked him up and drove him to the party.
The jury convicted appellant of involuntary manslaughter. Appellant has appealed from that conviction.
 II.
In his first assignment of error, appellant maintains he was denied a fair trial because the trial court failed to rule on a number of defense motions. Appellant's first defense counsel filed a motion to suppress identification witnesses and requested an order disclosing other evidence used in the identification procedure. Before trial commenced, appellant's trial attorney stated that the evidence used in the identification procedure had been disclosed by the prosecution. The trial court withheld ruling on the motion for voir dire and to suppress identification witnesses until and if the issue arose during trial.
Appellant's argument on this issue is unclear and confused. Appellant appears to be raising prosecutorial misconduct and ineffective assistance of counsel arguments in this assignment of error yet never sets forth any law or direct analysis in support of his contentions. Appellant's assignment of error itself only raises as error prejudice which may have resulted from the trial court's failure to rule on the motion for voir dire and to suppress identification witnesses. Therefore, any implication that appellant did not receive effective assistance of counsel or that the prosecutor engaged in misconduct will not be considered under this assignment of error.
Defense counsel never renewed the motion to voir dire the identification witnesses. An issue is waived, absent a showing of plain error, if it is not raised at the trial level. State v.Phillips (1995), 74 Ohio St.3d 72. According to the plain error doctrine, plain errors or defects affecting substantial rights may be noticed on appeal even though the errors were not brought to the attention of the trial court. Crim.R. 52(B). The plain error doctrine should be invoked by an appellate court only in exceptional circumstances to prevent a miscarriage of justice.State v. Waddy (1992), 63 Ohio St.3d 424, 437. Plain error will be recognized only where, but for the error, the result of the trial clearly would have been different, meaning the defendant would have been acquitted if not for the alleged error. Id. There is nothing in the record indicating that appellant would have been acquitted had the identification witnesses been subject to a voir dire examination. Jose Vargas testified that appellant took part in the melee leading up to the death of Christopher Blair. Vargas stated he was with appellant during the altercation with Blair and that appellant took part in the fight. Vargas was an acquaintance of appellant's and there is no doubt Vargas was sure of appellant's identity. No evidence regarding the identification process was admitted at trial. Prior to trial, appellant's attorney agreed that all evidence relating to the identification procedure had been provided to the defense by the prosecution. No plain error is present in the trial court's decision to delay ruling on appellant's motion. Any error which may have occurred as a result has been waived.
Appellant raises the argument that he was illegally arrested during the party at Heidi Dones' home. Appellant contends his conviction should be reversed because of this illegal arrest. Appellant withdrew his motion to suppress illegally obtained evidence. Crim.R. 12(B)(3) requires that a motion to suppress evidence on the ground that it was illegally obtained must be raised prior to trial. Failure to file a motion to suppress constitutes a waiver of any defense or objection. State v. Sibert
(1994), 98 Ohio App.3d 412. Because appellant withdrew his motion to suppress, the matter was never raised in the trial court. Failure to raise an apparent constitutional claim at the trial court level constitutes a waiver of that argument on appeal.State v. Awan (1986), 22 Ohio St.3d 120, 123. Although appellate courts have the discretion to review claims when they are not raised below, that discretion ordinarily is not exercised where the right to be vindicated was in existence prior to or at the time of trial. State v. Messer (1995), 107 Ohio App.3d 51, 58. The issue of the legality of appellant's arrest was in existence prior to the commencement of trial and will not now be determined upon appeal.
Appellant's first assignment of error is not well-taken.
 III.
In his second assignment of error, appellant contends he was denied a fair trial because of prosecutorial misconduct. Appellant complains the trial court did not adequately control the prosecutor's cross-examination of defense witnesses, allowed leading questions to be asked of some of the state's witnesses, and permitted the prosecutor to repeatedly interject the issue of race into the proceedings. Appellant also claims the prosecutor deliberately permitted false testimony to be presented.
A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219. The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. Statev. Maurer (1984), 15 Ohio St.3d 239, 266.
A trial court enjoys broad discretion in the admission and exclusion of evidence. That discretion will not be reversed on appeal absent a clear abuse of discretion and only if the defendant was materially prejudiced. State v. Withers (1975),44 Ohio St.2d 53, 55. Controlling the scope of cross-examination also lies within the trial court's discretion. State v. Slagle
(1992), 65 Ohio St.3d 597, 605. Cross-examination pertaining to prior misconduct is not unfairly prejudicial where it is clearly probative of truthfulness or untruthfulness. State v. Amburgey
(1987), 33 Ohio St.3d 115; State v. Williams (1981), 1 Ohio App.3d 156. When any witness testifies, the credibility of the witness is put directly into issue. State v. Anderson (Aug. 29, 1990), Montgomery App. No. 11703, unreported.
Evid.R. 609(A)(1) permits the credibility of a witness to be attacked by evidence the witness was convicted of a crime which was punishable by death or imprisonment in excess of one year. The trial court enjoys broad discretion in determining the extent to which testimony under Evid.R. 609 will be admitted. State v.Taylor (1997), 78 Ohio St.3d 15. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.State v. Bereschik (1996), 116 Ohio App.3d 829, 834.
Once a witness has admitted to a prior conviction, no further testimony on the crime is necessary because the basis for challenging the credibility of the witness has been established.State v. Dussell (June 10, 1993), Cuyahoga App. No. 62457, unreported. It is within the trial court's discretion to limit any questioning which asks more than the name of the crime, the time and place of conviction, and the punishment imposed.Amburgey, supra, at syllabus.
The prosecutor asked numerous questions regarding the details of the crimes for which witness Andre Curry had been convicted. Curry at first stated he had two felony convictions but then admitted to three felony convictions. The prosecutor elicited testimony from Curry regarding four convictions. Curry was convicted of aggravated assault, two aggravated burglaries, and vandalism. The state inquired into the details of each crime. As noted in Drussell, supra, only the admission of the prior conviction or convictions is necessary to challenge a witness credibility. Although the line of questioning was improper, appellant must still demonstrate prejudice. The jury was aware Curry was a convicted criminal as he admitted on direct examination that he was incarcerated in the penitentiary for a parole violation. During cross-examination, Curry was flip and evasive about his criminal record. The questions themselves did not undermine Curry's credibility as much as his overall attitude during his testimony did. Appellant was not prejudiced by the prosecutor's delving into the details of Curry's convictions.
Appellant next objects to a question asked of the investigating police officer by the prosecutor. The prosecutor inquired whether the police officer knew when someone should be officially charged with a crime, indicted, and taken to trial. The trial court sustained an objection to the question. The prosecutor continued the line of questioning regarding why other individuals implicated as being involved in the altercation with Christopher Blair were not charged. The police officer stated that they did not have strong evidence against those people. Appellant argues that the question about who should be charged with a crime implied that the police officer was capable of determining the guilt of a person prior to trial and that, even though the objection was sustained, the question itself prejudiced appellant. The police officer's subsequent answers made it clear that the other individuals were not charged because of a paucity of evidence, not because of any determination regarding guilt or innocence by the police.
Appellant contends the prosecutor asked nine-year old Thomas Bailey leading questions. The trial judge has discretion to allow leading questions on direct examination. See Staff Note to Evid.R. 611(C). Specifically, Evid.R. 611(C) allows leading questions as necessary to develop testimony. When a witness of tender years is testifying, the use of leading questions on direct examination lies within the discretion of the trial court.State v. Brown (1996), 112 Ohio App.3d 583; State v. Lewis
(1982), 4 Ohio App.3d 275. There was no misconduct by the prosecutor in his manner of questioning Thomas Bailey.
Appellant submits that the prosecutor interjected the issue of race into the proceedings by continually asking questions in which the white versus Hispanic issue was stressed. Although a prosecutor should be held to a higher standard of professionalism as a representative of the state, even highly offensive comments will not be grounds for reversal absent a showing of prejudice. See State v. Fuller (Sept. 24, 1996), Richland App. No. 95 CA 66, unreported. The comments and questions by the prosecutor in the instant case were mirrored by the testimony of most of the witnesses, both state and defense. The witnesses described the participants in the altercation in terms of race. It would have been better if the prosecutor had refrained from following suit, but there is no indication the result of the trial would have been otherwise if the prosecutor had not made the references to race.
Appellant also asserts that the prosecutor knowingly presented false evidence because the testimony of Thomas Bailey regarding where the shots were fired did not comport with the coroner's testimony that the victim suffered from a contact wound. Obviously, a prosecutor may not knowingly use perjured testimony.United States v. Agurs (1976), 427 U.S. 97, 103. However, appellant's argument that the child's testimony constituted perjury is specious. Any inconsistency in a child's testimony is a matter of credibility for determination by the trier of fact.State v. Mullen (Aug. 12, 1994), Meigs App. No. 93 CA 518, unreported. See also State v. Tyler (1990), 50 Ohio St.3d 24, 32. That witnesses give different versions of events happens at virtually every trial. Witnesses bring different perspectives and perceptions to court. There is absolutely no indication in the trial record that the prosecutor knowingly presented false testimony at trial.
A defendant is not guaranteed an error-free, perfect trial.United States v. Hasting (1983), 461 U.S. 499. The conduct by the prosecutor did not deprive appellant of a fair trial.
Appellant's second assignment of error is overruled.
 IV.
Appellant's third assignment asserts he was denied effective assistance of counsel at trial. Appellant raises a variety of concerns regarding his attorney's performance.
To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1987), 36 Ohio App.3d 162. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. Statev. Hamblin (1988), 37 Ohio St.3d 153. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland, supra, at 694.
Appellant argues his attorney should have made a predetermination that Ricky Blair and Thomas Bailey were competent witnesses showing that they had personal knowledge of the matter. Appellant's argument is nonsensical as both boys testified as eyewitnesses to the fight and murder of Christopher Blair.
Appellant raises general arguments that defense counsel should have objected to various errors committed by the prosecutor such as the introduction of hearsay and asking leading or argumentative questions. Appellant also asserts his attorney should have objected to the jury instructions although appellant never specifically mentions which instructions were allegedly erroneous. Appellant neglects to point to specific instances in the record which reflect the alleged errors. It is fundamental that the appellant bears the burden of affirmatively demonstrating error on appeal. The appellant's brief must include citations to the parts of the record on which the appellant relies with respect to each assignment of error. App.R. 16(A)(7);Zavagno v. Fritz Enterprises, Inc. (March 18, 1999), Cuyahoga App. No. 74696, unreported. Only those arguments which appellant supports with appropriate references to the record will be considered.
Appellant asserts his attorney should have requested a copy of the photo array shown to Thomas Bailey to determine whether the identification process was tainted in any way. As Bailey was not the only eye-witness who identified appellant as a participant in the fracas, appellant has not demonstrated prejudice by his attorney's failure to examine the identification process used for Bailey by the police.
Appellant further contends his attorney should have asked for a separation of witness earlier. The prosecutor requested a separation of witnesses partway into the testimony of the state's second witness, Thomas Bailey. The coroner was the first witness to testify. The purpose of a separation order pursuant to Evid.R. 615 is "`so that [witnesses] cannot hear the testimony of other witnesses,' Evid.R. 615, and tailor their testimony accordingly. Thus, a spectator or witness may not tell a prospective witness what has taken place in court if the judge has ordered separation of witnesses." State v. Waddy (1992), 63 Ohio St.3d 424, 434. There is nothing in the record reflecting that a witness was in the courtroom and heard the testimony of the coroner or Thomas Bailey.
Appellant lastly submits that his counsel was ineffective for not requesting a dismissal based upon contradictory testimony by prosecution witnesses. Inconsistencies separate from suborned perjury simply go to the weight of the evidence. State v.Shedwick (Nov. 20, 1997), Cuyahoga App. No. 71749, unreported. As discussed above, contradictions in the testimony of witnesses at trial are for the trier of fact to resolve. Counsel was not defective for failing to request a mistrial because no grounds for granting a mistrial existed.
A review of the record demonstrates that appellant's counsel was effective. Appellant received an adequate defense from his attorney.
Appellant's third assignment of error lacks merit.
 V.
Appellant's fourth assignment of error challenges the trial court's sentence of the maximum term allowed under law. Appellant contends the sentence is erroneous and an abuse of discretion because the trial court failed to comply with R.C. 2929.13(B).
Because appellant was convicted of a third-degree felony, the trial court needed to comply with R.C. 2929.13(C), which requires the trial court to follow R.C. 2929.11 and R.C. 2929.12. R.C.2929.11(A) provides:
 A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender, and making restitution to the victim of the offense, the public, or both.
R.C. 2929.12 sets forth factors which the trial court must consider before imposing sentence. Those factors include the seriousness of the injury suffered by the victim and lack of remorse. R.C. 2929.14(C) permits a trial court to impose the maximum sentence on those offenders who commit the worst forms of the offense and those who pose the greatest likelihood of committing future crimes. The record must affirmatively support the trial court's sentence. R.C. 2953.08(G)(1). While the trial court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. State v. Stribling (Dec. 10, 1998), Cuyahoga App. No. 74715, unreported.
At the sentencing hearing, the trial court noted that, but for appellant's involvement in the fight, Christopher Blair would not have been killed. The trial court stated the offense was very serious because a life was taken. The trial court found that appellant was not amenable to community control sanctions and that it considered the factors mandated by Senate Bill 2. The trial court remarked that appellant had showed no remorse or accepted any responsibility for the death of Christopher Blair. The record adequately shows that the trial court complied with the dictates of the revised code when imposing the maximum sentence for the offense of involuntary manslaughter.
Appellant's fourth assignment of error is not well-taken.
Judgment affirmed.
 VI.
In 74466, appellant appeals from his plea of no contest to and subsequent conviction for one count of possession of drugs.
Appellant assigns the following errors for review:
 I. THE COURT (SIC) FAILURE TO GRANT A CONTINUANCE DENIED THE DEFENDANT DUE PROCESS, THE EFFECTIVE ASSISTANCE OF COUNSEL, COMPULSORY PROCESS, THE RIGHT TO PRESENT A DEFENSE AND THE RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I
SECTION 10 OF THE OHIO CONSTITUTION.
 II. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED BY SENTENCING APPELLANT TO THE MAXIMUM SENTENCE CONTRARY TO LAW, AND ABUSED ITS DISCRETION AND ERRED BY FAILING TO COMPLY WITH R.C. 2929.13(B).
Finding appellant's appeal in 74466 to lack merit, the judgment of the trial court is affirmed.
 VII.
On October 30, 1996, appellant was arrested for possessing crack cocaine. On February 3, 1997, the grand jury indicted appellant for one count of possession of drugs in violation of R.C. 2925.11. Appellant entered a plea of not guilty. While this charge was pending, appellant was incarcerated for the Blair murder on June 15, 1997. Bond was forfeited on June 17, 1997, when appellant failed to appear in court and a capias was issued by the trial court. Appellant filed a motion to dismiss the drug possession charge due to a speedy trial violation. In the motion, appellant contended that the trial court's docket was not correct because continuances requested in appellant's murder trial were erroneously attributed to the drug possession case. Appellant also filed motions to suppress evidence and to correct the record. The motion to correct the record reiterated the arguments made in the speedy trial motion that continuances requested by appellant in the murder trial appeared on the docket for the drug possession charge.
On January 22, 1998, appellant filed a motion for a continuance until after the Blair murder trial was resolved. The trial court denied appellant's speedy trial motion after holding a hearing on the matter. The motion for continuance also was denied. The trial court denied appellant's motion to correct the record after noting that appellant never objected to the journal entries at the time the entries were filed months earlier.
The trial court held a hearing on appellant's suppression motion. After the prosecution presented its evidence, the trial court denied the motion. Appellant then changed his plea to no contest. The trial court found appellant guilty of the offense of possession of drugs. The trial court sentenced appellant to a term of twelve months for the offense at the same hearing in which sentence was imposed on appellant's involuntary manslaughter conviction.
 VIII.
In appellant's first assignment of error, he raises as error the trial court's decisions on a number of pre-trial motions but only argues the ruling on the speedy trial motion. Therefore, only the issue of the denial of appellant's motion for dismissal for a speedy trial violation will be addressed on appeal. In his argument, appellant asserts that continuances from the Blair trial were erroneously attributed and docketed in his drug possession case. Appellant submits that, because of these errors, his case was not brought to trial within two hundred seventy (270) days as required by law.
The trial court held a hearing on appellant's speedy trial motion. Appellant's motion itself raised the same arguments as are presented on appeal. No transcript of that hearing is found in the record before this court. The appellant has the duty of providing a reviewing court with a record of the facts, testimony, and evidentiary matters which are necessary to support the appellant's assignments of error. Volodkevich v. Volodkevich
(1989), 48 Ohio App.3d 313.
 When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.
Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Without all of the relevant evidence, an appellate court must presume the regularity of the proceeding's below and the validity of the trial court's judgment. State v. Powers (1996), 117 Ohio App.3d 124. The trial court's determination that no speedy trial violation occurred will be presumed to be correct.
A review of the record which is before this court shows that acapias was issued for appellant's arrest when appellant failed to appear for his arraignment on February 18, 1997. Appellant finally was arraigned on June 6, 1997. The issuance of a capias does more than toll the speedy trial time, it starts the time period anew. The time is recalculated from the time of the rearrest. State v. Bauer (1980), 61 Ohio St.2d 83. There is no indication in the record that appellant was arrested on thecapias. The time period will be calculated from the time of arraignment on June 6, 1997. Appellant was arrested on June 15, 1997, on the unrelated murder charge. The triple count provision of R.C. 2945.71(E) is not applicable. Appellant was required to be tried within two hundred seventy (270) days of June 6, 1997. R.C. 2945.71(C)(2). Appellant entered a plea of no contest to the charge on February 2, 1998. Even without taking into consideration the disputed continuances, appellant was tried well before two hundred seventy (270) days passed. The trial court correctly determined that appellant's speedy trial rights were not violated.
Appellant's first assignment of error lacks merit.
 IX.
Appellant's second assignment of error restates his previous argument that the trial court abused its discretion by sentencing appellant to the maximum sentence. Appellant's conviction for drug possession was for a fifth degree felony. It must be noted that appellant committed the involuntary manslaughter offense after his arrest for drug possession, showing a propensity for recidivism. Based on the factors discussed above, the trial court did not abuse its discretion by imposing the maximum sentence of twelve months to be served concurrently with appellant's sentence for involuntary manslaughter.
Appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The Defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON, P.J. and ANNE L. KTLBANE, J. CONCUR.
 __________________________________ LEO M. SPELLACY JUDGE