JOURNAL ENTRY AND OPINION
Defendant-appellant Andrew Fortson (aka Andrew Tolliver) appeals from his jury conviction for aggravated murder.
The victim, Elaine Lovett (aka Little Bit), a prostitute working for defendant, was killed more than twenty years ago on June 1, 1978. Two of defendant's relatives, Robbie Robertson (his half brother) and Charles Tolliver (his first cousin) were also allegedly involved. Police in Euclid (where the killing occurred), New York (where the victim and her family were from), and Florida (where another prostitute moved to escape defendant) put together parts of the case over a period of more than twenty years.
There was little physical evidence at the scene to indicate who committed the homicide. Fingerprints were found on two glasses in the victim's kitchen but were not identified until 1999. The investigation went through several stages: in 1978 when the homicide occurred, in 1986 when an alibi witness recanted her testimony, in 1991 when defendant's daughter told the police defendant admitted to the killing, and finally in 1999 when the police linked the fingerprints to defendant's co-defendant Robertson and Charles Tolliver.
On June 1, 1978, defendant and prostitute Jackie Lynn (aka Jackie Colter) reported finding the victim's body in her Euclid residence and were questioned by police. Lynn/Colter apparently did not know what happened. She was hysterical and police took no statement from her.
Two weeks later, on June 16, 1978, defendant and prostitute Jacque Conners (aka Tina Heimer) were questioned. Conners/Heimer provided defendant with an alibi for the time of the killing. Approximately eight years later, on May 3, 1986, after she had fled to Florida to escape defendant, however, she talked to Euclid police and recanted the alibi. The witness stated she told defendant on May 28, 1978 that the victim was going back to New York, would prostitute for someone else, and had given her new pimp some diamonds that defendant had given her. Defendant told the witness I'm going to kill the bitch. On the evening of the murder, Conners/Heimer fell asleep with defendant, and awoke between 3:00 and 4:00 a.m. when he was gone. When defendant returned after 4:00 a.m., he was nervous, pacing and looking for a witness. She agreed to provide him an alibi. When defendant tried to kill her with heroin in September of 1978, she fled to Florida.
Brenda Caver, another prostitute (and defendant's common law wife) had a daughter with defendant by the name of Andee Caver. Both Brenda and Andee testified that defendant was a pimp, that they were afraid to testify, and that he urged them to go to California rather than testify. The court called defendant's daughter as its own witness and each party cross-examined her. Her testimony at trial was guarded and vague. She admitted that she told Euclid police in 1991 that defendant confessed to killing the victim known as Little Bit.
The victim's mother and sister testified that the victim was in New York shortly before she was killed. The victim told her mother, Damilian Hildago, that she was afraid of Andy (defendant Andrew Fortson/Tolliver). The victim told her sister, Helen Lovett, that she was going back to Cleveland to get her possessions despite the fact that Andy told me if I go back, he will kill me.
The victim was strangled by her telephone cord and stabbed sixteen times in the apartment defendant rented for her shortly after she returned to Cleveland. Her furniture was also repeatedly slashed. There were no signs of forced entry.
After identifying his fingerprints on one of the glasses from the victim's apartment, Euclid and New York City police detectives interviewed co-defendant Robbie Robertson in 1999. NYPD Detective Neglia and Euclid Detective Jorz testified that Robertson told each of them the same story. When asked whether defendant was the killer, Robertson answered you're barking up the wrong tree. You have to question the guy who drove me there. Jorz testified that the fingerprints on the drinking glasses found in the victim's apartment belonged to Robertson and Tolliver, defendant's relatives.
The matter proceeded to a joint trial against defendant and co-defendant Robertson on charges of aggravated murder and conspiracy to commit aggravated murder.[1] The jury found defendant guilty of aggravated murder and acquitted Robertson. Defendant appeals, raising eleven assignments of error.
 I
Defendant's first, third, and fourth assignments of error relate to a statement made by co-defendant Robertson admitted into evidence at trial. They provide as follows:
 I. THE TRIAL COURT ERRED AND THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT DENIED DEFENDANT'S `MOTION FOR A SEPARATE TRIAL AND RELIEF FROM PREJUDICIAL JOINDER' AND THE DEFENDANT'S MOTION FOR MISTRIAL.
 III. THE ADMISSION OF THE WRITTEN STATEMENTS (INCLUDING COMMENTS) MADE BY THE CO-DEFENDANT (WHO MUST BE VIEWED AS A NON-TESTIFYING `DECLARANT,' AS THAT TERM IS DEFINED IN RULE 801[b] OHIO RULES OF EVIDENCE), AS SUBSTANTIVE PROOF OF THE DEFENDANT'S GUILT VIOLATED THE HEARSAY RULE.
 IV. THE ADMISSION AS SUBSTANTIVE PROOF OF STATEMENTS MADE BY THE CO-DEFENDANT VIOLATED THE DEFENDANT'S RIGHT OF CONFRONTATION.
These assignments lack merit.
Defendant's arguments supporting these assignments of error raise a common theme: he contends he was denied a fair trial because a statement by Robertson, a non-testifying co-defendant, implicated defendant in the crimes for which he was charged. A review of the record, however, reveals that the challenged statement not only fails to inculpate defendant, but actually expressly exculpated him.
Defendant's first assignment of error contends the trial court improperly held a joint trial on the charges against defendant and co-defendant Robertson. The two were charged with aggravated murder as well as a conspiracy with each other to commit aggravated murder of the same victim. It is well established that the law and public policy generally favor the joinder of charges and defendants which involve the same acts, transactions, or course of criminal conduct. See e.g., Crim.R. 8(B), Crim.R. 13 and State v. Dunkins (1983), 10 Ohio App.3d 72.
Ohio courts have generally held that a party waives any claim of error concerning joinder by failing to renew an objection at the end of the state's case or the conclusion of all the evidence as in the case at bar. See e.g., State v. Van Horn (Mar. 3, 2000), Lucas App. No. L-98-1171, unreported; State v. Walker (1990), 66 Ohio App.3d 518; State v. Strobel (1988), 51 Ohio App.3d 31; State v. Owens (1975),51 Ohio App.2d 132, 146.
In any event, defendant has not established sufficient prejudice from joinder to warrant a separate trial or to show that the trial court abused its discretion by denying his motion. When questioned by Detectives Neglia and Jorz concerning whether defendant killed the victim, Robertson specifically stated you're barking up the wrong tree. You have to question the guy who drove me there. Robertson maintained that he was set up by someone who placed evidence against him at the scene.
Contrary to defendant's argument, the quoted statement expressly denied defendant's involvement in the homicide and did not implicate defendant. Defendant has shown no basis for conducting a separate trial and such evidence would have been admissible against him even if a separate trial were conducted.
Defendant also complains that Robertson's statement said he was a pimp. Defendant was charged with aggravated murder and conspiracy to commit aggravated murder of one of the prostitutes who worked for him. It should come as no surprise that, to prove these charges, the jury would learn that defendant was a pimp. In fact, at least three other witnesses with personal knowledge, prostitutes Lynn/Colter, Conners/Heimer, and Brenda Caver, separately testified that defendant was a pimp.
Defendant was not charged in the case at bar with being a pimp. Because such evidence did not implicate him for a crime for which he was charged and was cumulative of other evidence properly admitted, any error concerning the admission of this detail from Robertson's statement during the joint trial was harmless beyond a reasonable doubt. Under the circumstances, defendant has not shown that the trial court abused its discretion by conducting a joint trial.
Defendant's third and fourth assignments of error argue that, regardless of the joinder issue, the trial court improperly admitted the same statement by Robertson. He argues the statement was hearsay and improperly admitted in violation of confrontation rights recognized by Bruton v. United States (1968), 391 U.S. 123. These arguments lack merit for the same reason. The Fifth District Court of Appeals specifically rejected similar arguments under strikingly similar facts in State v. Minor (Mar. 2, 2000), Richland App. No. 99 CA 63, unreported, appeal dismissed, State v. Minor (2000), 89 Ohio St.3d 1427.
Minor involved the joint trial of a defendant and co-defendant charged with aiding and abetting an aggravated murder and aggravated robbery. The trial court declined to suppress, and admitted into evidence at the joint trial, a statement by a non-testifying co-defendant. The co-defendant's statement to the police in Minor was as follows: You know what the fucked up thing is, that I didn't even know where we were when it happened. Id. at 3. The Minor court held that the defendant failed to show any error or a violation of Bruton, either in the admission of such evidence or in the prosecution's argument concerning the statement, because the term we did not identify defendant or anyone else to whom it referred.
The challenged statement in the case at bar presents a much easier question than that in Minor because Robertson specifically denied defendant's involvement. Robertson's remaining statement that the police would have to talk to the unidentified person who drove him to the victim's house likewise did not implicate defendant because the identity of the person was never provided. Defendant has not shown that any part of the challenged statement implicated defendant in either the homicide or the conspiracy. Under the circumstances he has not shown that the statement was improperly admitted.
Accordingly, defendant's first, third, and fourth assignments of error are overruled.
 II
Defendant's second assignment of error argues that hearsay information was admitted at trial, as follows:
 II. THE DEFENDANT'S RIGHT OF CONFRONTATION AND THE HEARSAY RULE WERE VIOLATED WHEN THE COURT ALLOWED THE JURY TO CONSIDER A PLETHORA OF HEARSAY EVIDENCE.
This assignment lacks merit.
Defendant challenges the trial court's admission of testimony by the victim's mother and sister, who stated the victim was afraid of defendant. He also challenges the admission of testimony from his own daughter to the police in 1991 that defendant admitted the killing to her.[2]
The victim's mother, Damilian Hildago, testified that the victim visited her in New York for two weeks following Mother's Day on May 12, 1978. The victim returned to Cleveland on May 28 and spoke to her mother two days later. The victim stated she was scared for her life and scared of defendant. The victim was supposed to return to New York two days later but was murdered. The victim's sister, Helen Lovett, testified that the victim spoke to defendant on the telephone from New York on May 26, 1978, two days before she returned to Cleveland. The victim was crying and stated, Andy told me if I go back he will kill me. She wanted to return to Cleveland to recover her possessions. The victim called her on May 31, 1978 after she returned to Cleveland and stated she was terrified.
The Ohio Supreme Court has repeatedly rejected the argument raised by defendant that expressions of fear of the defendant by a homicide victim before death constitute inadmissible hearsay. Such statements are admissible under the state of mind hearsay exception set forth in Evid.R. 803(3). E.g., State v. Reynolds (1998), 80 Ohio St.3d 670,677-678; State v. Awkal (1996), 76 Ohio St.3d 324, 330-331; State v. Frazier (1995), 73 Ohio St.3d 323, 337-338; State v. Simko (1994),71 Ohio St.3d 483, 490-491; State v. Apanovitch (1987), 33 Ohio St.3d 19,21-22. This court has done the same. E.g., State v. Wages (1993),87 Ohio App.3d 780; State v. Pedreira (Dec. 3, 1987), Cuyahoga App. No. 53987, unreported.
The exception set forth in Evid.R. 803(3) permits the introduction of statements concerning the victim's then existing state of mind, such as fear, but not the reasons for that fear. To be admissible, the statement must point to the future rather than the past. See e.g., State v. Apanovitch, supra. Contrary to defendant's argument, a trial court does not abuse its discretion by finding the evidence relevant. State v. Frazier, supra at 338.
The victim's statements concerning her fear of impending harm from defendant fall within this exception. The specific statement Andy told me if I go back he will kill me is equivalent to the statement He is going to kill me found to be permissible in State v. Frazier, supra. Even if this particular statement conveyed the reasons for her fear, the threat to kill her duplicated testimony of another witness, Conners/Heimer, so any error was harmless beyond a reasonable doubt. State v. Awkal, supra.
Defendant's arguments concerning the hearsay character of his daughter Andee Caver's testimony is no more persuasive. The record shows that Detective Newkirk did not testify about the substance of the statement given to him by defendant's daughter in 1991. Defendant's daughter had told Newkirk in 1991 that defendant admitted killing the victim. She was called by the court to testify as a witness at trial and testified about her prior statement to the police.
She testified that she had been encouraged to go to California rather than testify and stated by testifying she feared for her own life and that of her mother. Her testimony at trial was sometimes vague and equivocal. She stated she understood defendant to have told her that he hurt someone and many people. However, she admitted she told the police in 1991 that defendant confessed to killing the victim. She admitted she brought up the name Little Bit when she spoke with the police in 1991 and also stated that she told the police the truth in 1991.
Defendant has pointed to no out-of-court statement by the witness offered to prove the truth of the matter asserted. Evid.R. 801(C). His argument under the eighth assignment of error explicitly concedes that his daughter's statement was never presented into evidence. (Brief at 29.) Detective Newkirk did not reveal the contents of her statement when he testified. The prosecution's questions to the witness about her statement were not hearsay. Defendant has not shown that any of the victim's answers, which were made while in-court, under oath, and subject to cross-examination, constituted hearsay. The questions concerning her prior statement impeached her current version (after threats had been made against her) that defendant merely hurt people.
Accordingly, defendant's second assignment of error is overruled.
 III
Defendant's fifth, sixth, and seventh assignments of error assert that he was improperly denied discovery and denied the right to use prior statements made by the prostitutes to police. The assignments follow:
 V. THE COURT ERRED WHEN IT FAILED TO REQUIRE THE STATE TO PRODUCE COPIES OF ALL STATEMENTS, INTERVIEW NOTES, SUMMARIES AND THE LIKE THAT INCLUDED ANY COMMENTS MADE BY, OR ATTRIBUTED THEREIN TO, VARIOUS WITNESSES, INCLUDING JACKIE COLTER (OR ANY OTHER NAME USED BY HER AT THAT TIME) IN HER VARIOUS INTERVIEWS.
 VI. THE COURT ERRED AND DEFENDANT'S RIGHT OF CONFRONTATION WAS VIOLATED WHEN THE COURT REFUSED TO ALLOW THE DEFENSE TO CROSS-EXAMINE A WITNESS AS TO CERTAIN OMISSIONS FROM THE WITNESS' WRITTEN STATEMENT.
 VII. THE STATE WAS GUILTY OF MISCONDUCT AND THE ACCUSED DENIED DUE PROCESS IN THE WAKE OF THE COURT'S VALIDATING THE STATE'S OBJECTIONS TO THE DEFENSE MAKING FULL USE OF THE WITNESS HEIMER'S STATEMENT TO THE POLICE.
These assignments lack merit.
Defendant contends generally that the prosecution improperly withheld a witness statement and improperly limited his cross-examination of another witness. He contends the prosecution withheld a statement allegedly made to Euclid police captain Newkirk by Lynn/Colter in 1978 identifying Archie Jones as a potential suspect who beat up the victim. He also contends the trial court improperly limited his cross-examination of Conners/Heimer regarding omissions in her 1986 statement to the police, which recanted her 1978 alibi for defendant. Finally, he argues he was prevented from questioning Conners/Heimer regarding Archie Jones.
Defendant's fifth assignment of error contends the prosecution withheld a statement by Lynn/Colter to the Euclid police in 1978. The record shows that, on June 2, 1978, the police spoke to defendant and Lynn/Colter, who discovered the victim's dead body in her apartment. In a statement to the police, defendant admitted the victim called him from New York, but stated the last time he spoke to her was on May 31, 1978, the day before her death. He denied being a pimp. Detective Newkirk testified that no statement was taken from Lynn/Colter, because she was hysterical. Lynn/Colter denied signing a statement, and the trial court specifically found that there was no statement.
Defendant's argument to the contrary is based on a misuse of the term statement[3] and speculation that Lynn/Colter identified Archie Jones as a person who beat the victim and was a possible suspect. Nothing in the record shows that this witness made any statement or was the source of this information. We have no basis to question the witness' testimony or the trial court's finding. Under the circumstances, defendant has failed to show that the prosecution improperly withheld a witness statement by Lynn/Colter.
Defendant's sixth and seventh assignments of error contend that the trial court improperly limited his cross-examination of Conners/Heimer. This argument was most recently rejected in State v. Conner (Mar. 9, 2000), Cuyahoga App. No. 75773, unreported at 5-7.
Conners/Heimer testified under a limited grant of immunity for lying to the police and providing defendant with a false alibi in 1978. She left Mansfield three months earlier to become a prostitute for defendant in Cleveland. Defendant was the pimp for her and three other mothers-in-law, that is, prostitutes working for the same pimp, namely, the victim, Candy, and Chris. Conners/Heimer stated she told defendant on May 28, 1978 that the victim was leaving him and going to New York. On May 31, 1978, she got some photographs from the victim and gave them to defendant. He stated I'm going to kill the bitch.
She testified that defendant took her to a hotel room that evening where the two fell asleep. She awoke at 3:00 or 4:00 in the morning and defendant was gone. When he returned, he was pacing nervously and stated I got to find a witness. Defendant left again, took a Valium, and returned more sedated.
Conners/Heimer learned of the victim's death while at a bar. Defendant was outside fake crying. He told her I need you to be my alibi. He had just spoken to Euclid police and needed an alibi. She agreed to provide the alibi because she was in fear for her life. The two left Cleveland for a time to escape further investigation.
A few months after they returned, Conners/Heimer told defendant she wanted to leave. He threatened to kill her if she left. One day he tried to kill her by getting her to smoke heroin down near the lake. Her car was parked nearby, but she had not driven it there. She was able to escape when she saw a police officer. Chris, another one of the prostitutes who worked for defendant, came up missing in July or August 1978. Her body was never found, but the interior of her car was sliced up. Conners/Heimer was able to escape to Florida.
In May 1986, near the eighth anniversary of the victim's murder, Conners/Heimer contacted a Florida attorney. She ultimately met with Euclid police. She recanted the alibi that she had provided defendant in an interview recorded on audiotape. She also provided a lengthy written statement. The prosecution gave defense counsel her 1986 statement and played the audiotape outside the hearing of the jury.
Defendant's counsel pointed to details in her statement which were allegedly inconsistent with her trial testimony. He argued the statement mentioned that Archie Jones beat the victim and that Conners/Heimer did not see defendant until June 2, 1978. Robertson's counsel asserted that the witness' statement indicated she never spoke with the victim and did not mention Robertson's involvement in her statement.
The trial court found no inconsistencies between the witness' testimony and her 1986 statement. The witness was thereafter cross-examined extensively. Defendant's counsel questioned Conners/Heimer about Archie Jones, another pimp, whom the defense wanted to portray as a possible suspect. Co-defendant's counsel questioned her about the failure of her 1986 statement to mention Robertson's involvement and the scope of her relationship with the victim. Defense counsel also asked the witness why her 1978 statement mentioned that defendant left the hotel room only once, but that her 1986 statement stated he left twice.
On appeal, defendant argues the prosecution violated Brady v. Maryland (1963), 374 U.S. 83, and improperly limited cross-examination. This court rejected defendant's identical Brady argument when it was raised by defense counsel in Conner, supra at 5-6. The Conner court, citing State v. Brown (1996), 112 Ohio App.3d 583, 595, recognized the basic principle that suppression of evidence in violation of Brady cannot occur in a case when the evidence is presented to defendant before the conclusion of trial. Defendant's contention that the evidence must be given to defendant before the trial begins has already been expressly rejected. State v. Brown, supra at 595 (citing State v. Wickline (1990),50 Ohio St.3d 114, 116, and U.S. v. Agurs (1976), 427 U.S. 97, 103).
Contrary to defendant's argument, his counsel conducted extensive cross-examination. Defendant contends he was not permitted to question the witness concerning inconsistencies between her testimony and 1986 statement. However, the trial court found no such inconsistencies.
On appeal, he argues that her 1986 statement did not mention co-defendant Robertson's involvement. As this court noted in Conner, omissions from police reports do not necessarily constitute inconsistencies. Id. at 6, citing Euclid v. Key (Feb. 27, 1997), Cuyahoga App. Nos. 69382 and 69383, unreported. In any event, nothing in the record shows that defendant was precluded from questioning the witness on this subject. In fact, co-defendant's counsel questioned the witness about this precise omission. The witness stated she did not mention Robertson when she recanted the false alibi she provided for defendant in 1986 because no one asked her about Robertson.
Co-defendant's counsel also questioned the witness concerning the scope of her speaking relationship with the victim. Although defendant's counsel contends he was precluded from asking questions on the same subject, nothing in the record supports this argument. Defendant's final specific argument, raised for the first time in his brief on appeal, is that the victim allegedly said in her 1986 statement that defendant and the victim had broken off their relationship before the killing. The record shows that no such inconsistency was asserted at trial, so any such claim is waived. Under the circumstances, defendant has shown no material inconsistencies or prejudice from the alleged improper restriction of his cross-examination.
Accordingly, defendant's fifth, sixth, and seventh assignments of error are overruled.
 IV
Defendant's eighth, ninth, and tenth assignments of error assert prosecutorial misconduct in the questioning of defendant's daughter. These assignments follow:
 VIII. DUE PROCESS WAS DENIED THE DEFENDANT WHEN COUNSEL FOR THE STATE ASKED A SERIES OF LEADING QUESTIONS DIRECTED AT DEFENDANT'S DAUGHTER, WHICH QUESTIONS HAD THE EFFECT OF EITHER SUPPLYING HER WITH A `FALSE MEMORY' OF WHAT SHE HAD TOLD POLICE, OR WORSE YET, WERE ASKED WITHOUT A FACTUAL FOUNDATION AND THUS INSINUATED THE DEFENDANT ACTUALLY HAD CAUSED NOT ONLY THE DECEDENT'S [SIC], BUT ANOTHER PERSON'S AS WELL.
 IX. COUNSEL FOR THE STATE WAS GUILTY OF MISCONDUCT WHEN HE ARGUED, WITHOUT A FACTUAL BASIS, THAT THE DEFENDANT HAD IN FACT TOLD HIS DAUGHTER HE KILLED THE DECEDENT AND THAT DEFENSE COUNSEL'S ARGUMENT IN RESPONSE THERETO WAS FLAWED.
 X. THE PROSECUTOR WAS GUILTY OF MISCONDUCT IN THE WAKE OF HIS GROSS INSINUATIONS AND SUGGESTIONS THAT THE DEFENDANT'S DAUGHTER HAD BEEN THREATENED AND THAT THESE THREATS ACCOUNTED FOR HER ASSERTED RELUCTANCE TO TESTIFY AGAINST THE DEFENDANT AND ARGUABLY ACCOUNTED FOR THE WITNESS' TESTIMONY HAVING BEEN WEAK AND INCONSISTENT.
These assignments lack merit.
Defendant complains generally about the questioning of his daughter, Andee Caver, by the prosecution. He complains the witness was called to testify by the court as its own witness and that the prosecution questioned her about her 1991 statement to the police that defendant confessed to the homicide.
The record shows that the witness and her mother were afraid to testify. Brenda Caver testified that defendant talked to her on the day she was served with a subpoena, although he had not otherwise spoken to her for years. Defendant told her that Andee's appearance as a witness would be his demise. He suggested they not appear as witnesses and offered to pay for them to take a trip to California. Both witnesses were arrested by the FBI and brought before the court to testify at trial.
The trial court thereafter called Andee as its own witness. Andee stated that she was afraid to testify. She received a telephone call and feared that she and her mother would be killed if they testified. She testified that she had a discussion with Detective Newkirk on October 30, 1991. She told him that defendant had taken her for a ride in his car when he was under the influence of drugs. She admitted she told the police in 1991 that defendant killed Little Bit. Although she stated she told the police the truth in 1991, she now stated she understood defendant to have told her that he hurt someone and many people. Defendant told her God knew what he had done, that the authorities could not prove it, but that he would be punished by God.
Defendant's eighth assignment of error complains that the trial court called Andee as its own witness and permitted the prosecution to ask her leading questions. However, Evid.R. 614 expressly authorizes this practice and provides in pertinent part as follows:
(A) Calling by court
 The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.
The Ohio Supreme Court has held that a trial court's determination to call a witness as a witness of the court will not be reversed on appeal absent an abuse of discretion. State v. Apanovitch, supra at 22. An abuse of discretion requires more than an error of law or judgment and implies that the trial court's determination is unreasonable, arbitrary, or unconscionable. Id. The facts of the case at bar are like those in Apanovitch and we likewise hold that defendant failed to show the trial court abused its discretion by calling the witness as its own.
The witness in Apanovitch told the prosecution before trial that he had overheard a jailhouse confession by defendant to a capital murder. Defendant admitted the crime but stated the prosecution could never prove it. During voir dire, however, the witness changed his testimony, stating that defendant only told him they were trying to convict him on circumstantial evidence. The trial court ultimately called the witness as its own and permitted each party to cross-examine him. This court and the Ohio Supreme Court both determined that defendant had shown no error.
Defendant in the case at bar has likewise failed to show that the trial court's determination was unreasonable, arbitrary, or unconscionable. The record showed, before Andee was called to testify, that defendant tried to procure her absence because her testimony would be his demise, that she was afraid to testify because of threats made to her, and that she was taken into custody by the FBI under court order to ensure that she appeared. During the course of her testimony, she cried when the prosecutor mentioned the name of Charles Tolliver, defendant's first cousin, whose fingerprints were also found on a drinking glass in the victim's kitchen, but had not yet been apprehended or charged in connection with the case. She had only a vague recollection of her prior statement to the police and seemed to forget important details harmful to defendant. Under the circumstances, defendant has shown no reversible error by the trial court in proceeding as it did.
Defendant's ninth assignment of error contends the prosecution had an improper or insufficient basis for asking her the questions that it asked. He complains that the prosecution's questions were based on hearsay. However, defendant has cited no authority which precludes formulating questions based on information derived from out-of-court sources. In his brief on appeal, defendant expressly conceded under his eighth assignment of error that his daughter's statement to the police was never introduced into evidence. Finally, as he expressly noted in his closing argument to the jury, the witness' answers to the questions constitute evidence, not the questions themselves.
Defendant contends there was not a sufficient factual basis to question Andee concerning whether she told the police in 1991 that defendant admitted to the killing. The record shows, contrary to this argument, however, that Andee admitted she reported this to the police in 1991, that Andee herself first mentioned the victim's name Little Bit to the police at that time, and that Andee testified she did not lie to the police. The prosecution did not commit misconduct by asking her at trial whether certain statements in the 1991 police report were true when made because she failed to testify to those statements at trial.
Defendant's one-half page tenth assignment of error makes passing reference to a claim that the prosecution improperly questioned the witness as to whether she had been threatened. However, the trial court could properly find that questions concerning the victim's fear of defendant were relevant to the credibility of her testimony.
Accordingly, defendant's eight, ninth and tenth assignments of error are overruled.
 V
Defendant's eleventh assignment of error argues the prosecution committed misconduct by making two statements during its final closing argument. His final assignment follows:
 XI. GIVEN THAT IT IS UNPROFESSIONAL FOR A PROSECUTOR TO INTENTIONALLY REFER TO, OR ARGUE ON THE BASIS OF FACTS OUTSIDE THE RECORD; TO INSINUATE THE EXISTENCE OF FACTS FOR WHICH NO PROOF WAS OFFERED; AND TO DENIGRATE THE LEGITIMATE EFFORTS OF COUNSEL OR PERSONALLY ATTACK HIS ETHICS AND INTEGRITY, IT FOLLOWS THE PROSECUTOR'S ACTIONS ASSAILED HEREIN MUST BE REGARDED AS MISCONDUCT SUFFICIENT TO DEPRIVE THE ACCUSED OF A FAIR TRIAL.
This assignment lacks merit.
Defendant contends that the prosecution committed misconduct during closing argument by (1) challenging defense counsel's assertion that the police improperly withheld witness statements, and (2) by pointing out that defendant was laughing while sitting in front of the jury during closing arguments.
The defense counsel claims that the police improperly suppressed or withheld discoverable information to deny him a fair trial. Defendant has failed to establish this claim on the record in the case at bar. During the course of closing argument to the jury, defense counsel repeatedly insisted that witness statements were improperly withheld from him by the prosecution. During a sidebar conference, the trial judge finally instructed counsel to stop arguing the law erroneously to the jury and that if he persisted the court would correctly instruct the jury concerning discovery.
During rebuttal in its final closing argument, the prosecutor correctly stated that notes made during interviews by police detectives are not discoverable statements within the scope of Crim.R. 16. See e.g., State v. Moore (1991), 74 Ohio App.3d 334, 340-341 (detective's interview notes did not constitute statements of witness within the scope of discovery under Crim.R. 16). Moreover, contrary to defendant's argument, the record contains no indication that Colter was the source of information concerning Archie Jones. Not only did the prosecution correctly state the law, but it was entitled to do so to rebut the argument by defense counsel that the state was not playing by the rules to obtain his conviction.
Defendant's final complaint is that the prosecutor mentioned to the jury that defendant was laughing during closing arguments. His brief on appeal does not argue, let alone establish prejudice from this comment. In State v. Burgan (May 21, 1989), Cuyahoga App. No. 52080, unreported, we previously found that such a comment constituted harmless error, stating as follows:
 Improper prosecutorial argument alone is not a proper basis for reversal if the trial was otherwise a fair one. United States v. Young (1985), 470 U.S. 1. An examination must be made of the remarks within the context of the trial to determine whether prejudicial error resulted. Id.
 The statements of the prosecutor did not prejudicially affect the substantial rights of the appellant. The trial judge exercised his discretion, as indicated by the fact that some of the objections were sustained, and acted properly to assure that appellant received a fair trial.
 Any error in the admission of the remarks was harmless beyond a reasonable doubt in light of the context of the remarks and the evidence against the appellant. See State v. Bayless (1976), 48 Ohio St.2d 73; Chapman v. California (1967), 386 U.S. 18.
As in Burgan, the record in the case at bar fails to show any prejudice. The record contains compelling evidence of defendant's guilt and no indication that the comments contributed to the jury's verdict or that defendant was denied a fair trial.
Accordingly, defendant's eleventh assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and COLLEEN CONWAY COONEY, J., CONCUR.
 ______________________________________ DIANE KARPINSKI, ADMINISTRATIVE JUDGE:
[1] Charges were filed in a separate action against Tolliver, who appeals from his conviction in State v. Tolliver, Cuyahoga App. No. 78786. The conspiracy charge was dismissed during the course of trial.
[2] Defendant's arguments under this assignment of error assert that the prosecution improperly admitted hearsay. His remaining challenges concerning his daughter's testimony are raised in his eighth through tenth assignments of error.
[3] As noted below in connection with defendant's eleventh assignment of error, even if detective Newkirk had taken notes while interviewing Lynn/Colter in 1978, such notes would not constitute statements discoverable under Crim.R. 16. See e.g, State v. Moore (1991),74 Ohio App.3d 334, 340-341.